BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Chief, Civil Division
U.S. Attorney's Office, District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: Steven.Skrocki@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENNETH H. SHADE,<br><br>                Plaintiff,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR, et al.,<br><br>                Defendant. | Case No. 3:20-cv-00198-HRH |

**MOTION TO DISMISS**

The United States files with the court a Motion to Dismiss pursuant to FRCP 12(b)(1) and FRCP 12(b)(6) for lack of jurisdiction as the United States has not waived sovereign immunity under the Quiet Title Act. Moreover,

neither the claimed jurisdictional basis under the Declaratory Judgement Act nor the Administrative Procedures Act fail provide an independent source of federal jurisdiction. Given that there is no jurisdictional basis for this court, the amended complaint should be dismissed as to all parties.

A. **INTRODUCTION: THE CHANEY/SHADE DISPUTE**[1]

There is no dispute that the Shade Native allotment predated the Chaney allotment.[2] Allegedly, Henry Shade built the road before Chaney began use and occupancy of her allotment. The road provided the Shade's access to Dillingham's road system. (Complaint at ¶1.) Shade did not receive a grant of right of way from the Bureau of Land Management (BLM) for this road and BLM never adjudicated whether the claimed road was a "valid existing right." After BLM issued Shade's certificate of allotment, BLM issued a certificate of allotment to Ella Mae Chaney (Chaney). The Chaney allotment encompassed/included the Shade access road, thus, in order to travel to and from their property the Shades were required to travel over the Chaney allotment. It is not disputed that the BLM did not reserve the road in

---

[1] The United States adopts and incorporates by reference the facts listed as 'Background' in Exhibit 2, Shade v. Acting Alaska Regional Director, Bureau of Indian Affairs, Docket Nos. IBIA 17-131, 18-017 (December 4, 2019)(Attached hereto as Exhibit A in its entirety)

[2] The BLM granted the allotments pursuant to the Act of May 17, 1906 (34 Stat. 197, as amended) ("Alaska Native Allotment Act").

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH     Page 2 of 18

the certificate of allotment for the Chaney allotment nor is there mention of the road in the Shade allotment. (Exhibit B, Chaney allotment, Exhibit C, Shade allotment)

Prior to the filing of the instant suit, Shade requested that the Bureau of Indian Affairs' (BIA) Regional Director issue a decision to 'confirm' the existence of a 'purported right of way' over the Chaney property. (Exhibit A at 1). The BIA Regional Director did not respond to Shade's request, and Shade appealed to the Interior Board of Indian Appeals (Board). The Board undertook a factual and legal analysis of Shade's claim. *Id.* at 1-8.

In the appeal, Shade argued that the road was a valid right of way over the Chaney allotment. Shade also requested the IBIA to confirm that a right of way for the road was implied by law across the Chaney allotment, and that the Board advise Chaney that interference with the right of way constituted trespass. Shade further requested that the Board recommend Chaney acknowledge the right of way by signed writing to avoid further legal proceedings. (Exhibit A at 2-3). All of Shade's claims, some of which are duplicated in this current filing, were denied with the Board finding that the Department of Interior lacked authority to confirm a right-of-way across the Chaney allotment. *Id.* at 4-8.

Following that denial, Shade filed the present action and listed the following causes of action in the complaint:

- Count 1: Declaratory Judgment against Regional Director of the BIA and Chaney pursuant to 28 USC 2201, Creation of Remedy within jurisdiction of federal courts;

- Count 2: Declaratory Judgment against the Regional Director under the Administrative Procedure Act, 5 U.S.C. Sections 701-706;

- Count 3: Mandamus of Injunction as to the Regional Director alone pursuant to 28 USC 1361 and 2202;

- Count4: Injunctive Relief against Chaney pursuant to 28 USC 2202, and

- Count 5: Damages Against Chaney[3]

All counts of the complaint should be dismissed as the only means to have a right of way recognized across lands in which the United States holds an interest is the Quiet Title Act (QTA). As shown here, the QTA does not provide a waiver of sovereign immunity for claims against a restricted fee allotment. Given that the United States has more than a 'colorable' claim to the Chaney allotment, those allotments fall within the "Indian lands" exception to the waiver of federal sovereign immunity in the QTA, 28 U.S.C.

---

[3] The United States is solely representing Chaney's interest, not Chaney personally. Chaney has retained counsel who has filed an entry of appearance in this case.

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH     Page 4 of 18

§2409a(a). Shade's complaint cannot defeat the lack of jurisdiction in this case under any of the statutes plead.

B. **ARGUMENT**

1. **MOTION TO DISMISS: FACIAL ATTACK AND FRCP 12(b)(6)**

A motion to dismiss under Rule 12(b)(1) tests the jurisdiction of the court based on the complaint. A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) (citation omitted). In this circumstance the attack is facial because Shade's allegations are barred by the QTA.

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill,* 80 F.3d at 338. Dismissal is proper only where there is no cognizable legal theory, or an absence of sufficient facts alleged to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699

(9th Cir. 1988); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) Here, the complaint fails to plead a cognizable legal theory for jurisdiction. Accordingly, it must be dismissed.

### 2. THE LIMITATIONS TO THE QUIET TITLE ACT'S WAIVER OF SOVEREIGN IMMUNITY DEPRIVES THIS COURT OF JURISDICTION

The QTA provides: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. §2409a(a). The QTA applies "to cases involving claims for less than fee simple title interests to disputed property," such as claims for rights-of-way. *State of Alaska v. Babbitt*, 38 F.3d 1068, 1074 (9th Cir. 1994) ("*Albert*") (collecting cases);*see also Alaska Dep't of Natural Res. v. United States* 816 F.3d 580, 584 (9th Cir. 2016) (claimed RS 2477 across an Alaska Native allotment); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2205 (2012) (Dispute on whether the United States can hold a trust interest); *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014) (claimed RS 2477 across Bureau of Land Management (BLM) land).

Of these cases, *Alaska Dep't of Natural Resources* is the most applicable to this case due to its recency and that it speaks directly to a likely valid

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH     Page 6 of 18

claim by the State of Alaska for a right away across a Native allotment which was denied under the QTA and the Declaratory Judgment Act. *Alaska Dep't of Natural Res.* 16 F.3d at 586.

The QTA "provides 'the exclusive means by which adverse claimants may challenge the United States' title to real property.'" *Alaska Dep't of Natural Res.*, 816 F.3d at 585 (quoting *Block v. North Dakota*, 461 U.S. 273, 286 (1983)); *see Patchak*, 132 S. Ct. at 2205 (describing nature of the QTA's waiver of sovereign immunity). Congress placed "carefully crafted limitations" on the QTA's waiver of sovereign immunity, *United States v. Mottaz*, 476 U.S. 834, 844 (1986) and deemed those limitations "necessary for the national public interest." *Id.* at 847 (quoting *Block*, 461 U.S. at 284-85). "Because it provides a statutory waiver of sovereign immunity, the courts strictly and narrowly construe the QTA." *S.W. Four Wheel Drive Ass'n v. BLM*, 271 F. Supp. 2d 1308, 1311 (D.N.M. 2003), aff'd sub nom. *S.W. Four Wheel Drive Ass'n. v. BLM*, 363 F.3d 1069 (10th Cir. 2004).

While the QTA is a waiver of federal sovereign immunity, the waiver, however, has important limitations which are in operation here. First, the "Indian lands" exception of the QTA provides "This section does not apply to trust or restricted Indian lands." 28 U.S.C. §2409a(a). Therefore, "when the United States claims an interest in real property based on that property's

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH     Page 7 of 18

status as trust or restricted Indian lands, the Quiet Title Act does not waive the government's immunity." *Mottaz*, 476 U.S. at 843. *See Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987) ("The ordinary reason[s] for enforcing sovereign immunity… are reinforced when Indian lands are in question."). Second, the QTA has a 12-year statute of limitations. 28 U.S.C. § 2409a(g).

The Supreme Court recently reiterated: "The QTA's authorization of suit 'does not apply to trust or restricted Indian lands.'" *Patchak*, 132 S. Ct. at 2205 (quoting 28 U.S.C. §2409a(a)). "In the QTA, Congress made a judgment about how far to allow quiet title suits – to a point, but no further. (The 'no further' includes the 'Indian lands' exception)." *Id.* at 2209.

The Chaney allotment falls squarely within the Indian lands exception in the QTA. Chaney's allotment is, by definition, 'restricted Indian land.' *See* 25 C.F.R. §152.1(c) ("Restricted land means land or any interest therein, the title to which is held by an individual Indian, subject to Federal restrictions against alienation or encumbrance."). The Ninth Circuit has repeatedly found certificates of allotment granted pursuant to the Alaska Native Allotment Act are included within the restricted Indian lands of the Indian lands' exception "by virtue of the restraint on alienation contained in the allotment certificates." *Alaska Dep't of Natural Res.*, 816 F.3d at 585; *Accord Shade v. U.S. DOI, et al.*

Case No. 3:20-cv-00198-HRH     Page 8 of 18

*Albert*, 38 F.3d at 1076; *State of Alaska v. Babbitt*, 182 F.3d 672, 675 (9th Cir. 1999) ("*Bryant*"); *State of Alaska v. Babbitt*, 75 F.3d 449, 451-52 (9th Cir. 1996). The Chaney certificate of allotment does contain the restriction on alienation. (Ex. B, pg. 1)

Shade may argue that the United States does not have colorable title to the property interests in his claim, but this argument lacks merit. In order to make this claim, Shade has the burden to prove that a valid right of way was granted prior to the allotment being issued to Chaney. *Alaska Dep't of Natural Res.*, 816 F.3d at 585; *Albert*, 38 F.3d at 1076. Shade has never received a valid right of way from the BLM. There is no argument that Chaney does not own the fee estate in the Chaney allotment and it is subject to restrictions on alienation. Even if the allotment were subject to a right of way for Shade's driveway, the United States would hold colorable title to the restrictions on alienation to the property claimed by Shade. In the only case involving an Alaska Native allotment where the court found the United States did not have colorable title, the case hinged on the United States' appropriation of the land to the State of Alaska prior to conveying the allotment. *Bryant*, 182 F.3d at 676-77. However, in this case, like in *Alaska Dep't of Natural Res.*, we do not have a "clear and undisputed grant from the federal government" to Shade. *Alaska Dep't of Natural Res.*, 816 F.3d at 585.

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH        Page 9 of 18

Arguably, the United States could have reserved a right of way for Shade's driveway, but there is no clear and undisputed evidence that it made that grant or was required to do so.[4] *See Leo Titus, Sr.*, 89 IBLA 323 (1985) (While BLM had the authority to recognize RS 2477 routes in allotments, it was not required to do so).

Even if the Indian Lands exception did not apply, Shade's claim would still be barred by the statute of limitations of the QTA. The QTA provides that "[a]ny civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). There is no reasonable argument that Shade was unaware that the driveway he built crossed lands owned by the United States at the time it was built nor that it was conveyed as a Native allotment to Chaney in 1992. At that time, it was Henry Shade's duty to determine if the property rights he believed he owned were

---

[4] Shade asserts that "BLM knew from its field work that the road, which crossed the Chaney allotment, was built by Henry Shade before Chaney began the use and occupancy of her allotment, and BLM knew that the road was the only practicable access to the Shade allotment." (Complaint at ¶1.) While Shade asserts BLM knew, this does not rise to the level of BLM actually making a clear and undisputed grant.

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH        Page 10 of 18

recognized in the certificate. Shade may argue that he raised the issue administratively first which should toll the statute of limitations. The record reflects Shade first contacted BIA in 2017 to request it to recognize his claimed right of way. *Kenneth H. Shade v. Acting Alaska Regional Director, BIA*, 67 IBLA 15, 15 (2019). As such, even if his claims are not barred by the Indian Lands exception, the claims are time barred.

### 4. THE ADMINISTRATIVE PROCEDURE ACT DOES NOT OPERATE TO CONFER JURISDICTION

Shade's claims for jurisdiction also fail under the Administrative Procedure Act (APA). The APA provides a waiver of sovereign immunity that might initially appear applicable in the context of a title dispute involving an administrative agency. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action ... seeking relief other than money damages ...shall not be dismissed ... on the ground that it is against the United States"). However, the APA's waiver is limited; specifically, it does not "confer [ ] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* It is the law that the QTA "retain[s] the United States' immunity from suit by third parties challenging the United States' title to land held in trust for Indians," *Mottaz,* 476 U.S. 834, 842 (1986). These

authorities prevent application of the APA waiver. *See Neighbors for Rational Dev., Inc. v. Norton,* 379 F.3d 956, 961 (10th Cir. 2004).

The Supreme Court recently analyzed the specific issue of whether the APA can provide a waiver of sovereign immunity where the QTA arguably bars it. *Patchak*, 132 S. Ct. at 2204-10. The court found that if a claim is to quiet title, "[Quiet title] is universally understood to refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property," then the QTA must apply for the waiver of sovereign immunity. Id. at 2206. In explaining why "a plaintiff cannot use the [Administrative Procedure Act] to end-run the QTA's limitations," the Court states "'Congress has dealt in particularity with a claim and [has] intended a specified remedy' – including its exceptions – that is the end of the matter[.]" *Patchak*, 132 S. Ct. at 2205 (quoting *Block*, 461 U.S. at 286 n.22) (final bracket added). *Accord Bryant*, 182 F.3d at 674. Here, Shade's APA claim is to force the Department of Interior to recognize his claim of a right of way. This is clearly a suit in which he not only disputes Chaney's right to the land but asserts his own right to an interest therein. In fact, the amended complaint, seeking mandamus, makes it clear that Shade is seeking an interest in Chaney's lands in seeking what amounts to clear title out of the allotment. Thus, the APA is deficient in overcoming the jurisdictional bar

prohibiting the court hearing this case.

### C. THE DECLARATORY JUDGMENT ACT IS NOT AN INDEPENDENT SOURCE OF FEDERAL SUBJECT MATTER JURISDICTION

Shade's complaint alleges a 'valid existing right under ANILCA', and thus he seeks a Declaratory Judgment against the BIA Regional Director, the Department of Interior and Chaney pursuant to the DJA along with the '[c]reation of remedy within jurisdiction of federal courts.' The remedy Shade seeks are for this court to find a valid existing right, an implied right-of-way and easement by necessity over the Chaney allotment, and damages among other claims for relief. With exceptions not relevant here, the DJA authorizes a federal court, "[i]n a case of actual controversy *within its jurisdiction*," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §2201(a). (emphasis added) However, the DJA is "not an independent source of federal subject matter jurisdiction." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). "[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction[.]" *Nationwide Mut. Ins. Co. v. Liberatore,* 408 F.3d 1158, 1161 (9th Cir.2005).

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH      Page 13 of 18

In essence, the DJA is a remedial statute creating a remedy whereby a federal court "in a case of actual controversy within its jurisdiction...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986) (citing 28 U.S.C. § 2201). The Ninth Circuit has recognized that the DJA "was enacted to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication without having to wait until he is sued by his adversary." *Id.* (citations omitted). Put differently, the remedy available under the DJA "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued.... It permits *actual controversies* to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants." *United Food & Commercial Workers Local Union Numbers 137, 324, 770, 899, 905, 1167, 1222, 1428, and 1442 v.*

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH        Page 14 of 18

*Food Employers Council, Inc.*, 827 F.2d 519, 524 (9th Cir. 1987) (citing 10B CHARLES A. WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2751, at 569–71 (2d ed. 1983))(emphasis added). The purpose of the DJA is to give litigants an early opportunity to resolve federal issues to avoid "the threat of impending litigation." *Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1172 (9th Cir. 2002) (citing *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (per curiam)).

Clearly, this is not what is occurring before this court. There is not, as is required, a request for resolution of a litigation issue to resolve a federal issue or the party's position in it with an advance judgment from the court. Here, the Shade complaint is in fact a clear lawsuit, seeking the remedy of divesting Chaney of property interest in her allotment. In actual operation, it 'jumps the gun' by seeking the use of the act as a basis for jurisdiction when, it is clear, jurisdiction does not exist. As a basis for federal jurisdiction the DJA does not provide an independent basis for federal subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Rather, it vests a district court with discretion to hear an action which is already within its jurisdiction. 28 U.S.C. § 2201(a).

Even without that analysis the Ninth Circuit has held that there must exist a "substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Culinary Workers Union, Local 226 v. Del Papa,* 200 F.3d 614 (9th Cir. 1999) (determining a substantial controversy exists where plaintiff was threatened with criminal prosecution) (citing *Ross v. Alaska*, 189 F.3d 1107, 1114 (9th Cir. 1999)). These justiciability limitations are reflected in the doctrines of standing, mootness, and ripeness. *Id.* (*citing Lee v. State of Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997)). Thus, the determination of whether the DJA applies rests on whether there is an actual case or controversy before the Court which satisfies the jurisdictional requirements. Here, no such case or controversy exists before this Court, as the QTA proscribes jurisdiction.

In addition to those failures, and as stated earlier, the DJA requires that a plaintiff must establish standing by showing "that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Plum Creek Timber Co. v. Trout Unlimited*, 255 F. Supp. 2d 1159, 1164–65 (D. Idaho 2003)(citations omitted). This, Shade has not done.

*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH      Page 16 of 18

Shade has not shown immediacy, and no defined impact on the use of the road sufficient to confer triggering the DJA even if it was applicable. At present, there is no claim that Chaney outright barred or has threatened to bar Shade's use of the road to access his property. There has been no prohibition on Shade's access to the property—only the request for remedies to use the road over Chaney's property in an unrestricted manner in any way which Shade or others presumably wish. Like with the APA, "A claim under the Declaratory Judgment Act may not be used as an end run around the QTA's limited waiver of sovereign immunity." *Alaska Dep't of Natural Res.*, 816 F.3d at 586.

## CONCLUSION

The Shade's complaint fails for lack of jurisdiction under the QTA because it claims an interest in Indian lands and it is time-barred by the statute of limitations. Neither the DJA nor the APA may be used to side-step the QTA's limited waiver of sovereign immunity. For the reasons provided here, the Shade's complaint should be dismissed.

// //


// //


*Shade v. U.S. DOI, et al.*
Case No. 3:20-cv-00198-HRH    Page 17 of 18

RESPECTFULLY SUBMITTED this 12th day of February 2021, in Anchorage, Alaska.

> BRYAN SCHRODER
> United States Attorney
>
> s/ Steven E. Skrocki
> Chief, Civil Division
> Attorney for the Defendant

**CERTIFICATE OF SERVICE**
I hereby certify that on February 12, 2021,
a copy of the foregoing was served electronically to:

Russell L. Winner
Winner & Associates, P.C.

s/ Steven E. Skrocki
Office of the U.S. Attorney