Roger W. DuBrock
AK Bar No. 6803011
roger@sonosky.net
K. Amanda Saunders
AK Bar No. 2007066
amandas@sonosky.net
Sonosky, Chambers, Sachse,
   Miller & Monkman, LLP
725 East Fireweed Lane, Suite 420
Anchorage, Alaska 99503
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

Attorneys for Defendant Ellamae A. Chaney

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| KENNETH H. SHADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00198-HRH |
| | ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINDER IN MOTION TO DISMISS AND ADDITIONAL SUPPORTING MEMORANDUM

# I. INTRODUCTION

Defendant Ellamae Chaney hereby joins the United States[1] in moving to dismiss this action and provides this supplemental memorandum in support of dismissal.[2]

It is well-settled that when the United States holds an interest in land—such as here, via a restraint on alienation in Ellamae Chaney's Native allotment—the Quiet Title Act (QTA), 28 U.S.C. § 2409a(a), is the *only* mechanism available to challenge the United States' interest in that real property. The QTA waived sovereign immunity for this limited purpose, but specifically excluded trust or restricted Indian lands from that waiver. The QTA also only waived the United States immunity for twelve years after a claim first accrues. Because Plaintiff seeks to alienate Ellamae Chaney's interest in her restricted Native allotment, and any claim that may exist accrued well over twelve years ago, the United States is immune from suit under the QTA. And because the United States is an indispensable party to any action to alienate an interest in restricted Indian lands, this action cannot continue without the United States and must be dismissed in its entirety under Rule 12(b)(1).

Plaintiffs have also failed to state a claim for relief under 43 U.S.C. § 1746 because § 1746 and its implementing regulations simply create an administrative process for an

---

[1] Plaintiff has named the United States Department of the Interior (DOI), the Secretary of the United States Department of the Interior (Secretary), and the Director of the Alaska Region of the Bureau of Indian Affairs (BIA) as parties to this action. 1st Am. Compl. ¶¶ 9-11, ECF No. 14. For purposes of this motion, Chaney refers to the DOI, the Secretary, and the BIA collectively as the "United States" or the "government."

[2] U.S Mot. to Dismiss, ECF No. 15; *see* Order Stip. for Br. Schedule, ECF No. 19.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 1 of 26

individual to seek correction of factual mistakes in their *own* patent—it does not provide for "correction" of the vested property rights of another. This action must therefore also be dismissed under Rule 12(b)(6).

## II.   BACKGROUND

Plaintiff purports to have an implied right-of-way and easement by necessity to use the road that crosses Ellamae Chaney's allotment and alleges that this road is the "only practicable" means of access.[3]  Whether the road—now known as the Shannon Lake Road—is Plaintiff's "only practicable" means of access is both irrelevant to and beyond the scope of the legal issues presented in this motion to dismiss. It is also subject to dispute. If "only practicable" is defined as "least expensive" or "easiest," that may be correct, because access across Ellamae Chaney's allotment would not require Plaintiff to consider alternate routes of access. Any more rigorous definition would be contested by Ellamae Chaney, however, because a review of the maps provided by the government, and other government sources,[4] reveals the following facts: first, that the Chaney and Shade allotments have a relatively short common boundary; second, that the Shade allotment

---

[3] 1st Am. Compl. ¶ 1.

[4] This Court may take judicial notice of the facts in the government sources included in Exhibits 1-4 to this motion because these "sources accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information posted on governmental websites and citing cases); *Suulutaaq, Inc. v. Williams*, 782 F. Supp. 2d 795, 806 (D. Alaska 2010) ("[C]ourts may take judicial notice of matters of public record under Federal Rule of Evidence 201.").

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 2 of 26

borders other parcels;[5] third, that much of the surrounding land is owned by the local ANCSA village corporation, Choggiung Limited;[6] fourth, that Choggiung has subdivided some of its lands to the east of the Shade allotment, and that this subdivision contains platted streets;[7] and fifth, that these streets, such as Pike Place or Char Lane, could be further extended across the lands to the west, which are also owned by Choggiung, and which border the Shade allotment.[8]

In order to determine whether Choggiung would grant such access, the Shades only need to ask.[9] But instead of asking, the Shades have chosen to litigate an issue that could have been raised years ago but is no longer timely.[10] The burden is not now on Ellamae Chaney to sacrifice her own vested property rights because a neighboring landowner failed to pursue other remedies. As described by the United States, "[t]here has been no prohibition on Shade's access to the property—only the request for remedies to use the

---

[5] *See* U.S. Notice of Compliance, Exs. A-B, ECF Nos. 20-1 and 20-2.

[6] Ex. 1 (Official Plat of Coho Subdivision, approved by the City of Dillingham Planning Commission) (showing lands owned by Choggiung); *see also* Choggiung Limited, https://www.choggiung.com/woodmap/map3.html (showing Choggiung lands).

[7] Ex. 1 (Shannon Lake Road not platted across the Chaney allotment).

[8] *Id.* (indicating that right-of-way for Pike Place and Char Lane may be extended).

[9] *See* Choggiung Limited, *Our Lands*, https://www.choggiung.com/land-dept/leases-our-lands/.

[10] *See* 43 U.S.C. § 1634(a)(5)(C) (creating a process for a person—prior to the certification of the allotment—to protest a Native allotment application, and requiring BLM to adjudicate the protest, if the person claims an interest in the land).

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 3 of 26

road over Chaney's property in an unrestricted manner in any way which Shade or others presumably wish."[11]

Plaintiff also claims that under the Alaska National Interest Lands Conservation Act (ANILCA), his purported easement was a "valid existing right" that Ellamae Chaney's allotment was subject to,[12] even though the Chaney allotment certificate does not include a reservation of a right-of-way for the Shannon Lake Road.[13] Nor does the Shade allotment certificate include any sort of access rights to the Shannon Lake Road.[14] Plaintiff frames this as some sort of inadvertent mistake,[15] but the Shannon Lake Road was not reserved in *any* of the patents for the three other lots that the road crosses before reaching Ellamae Chaney's allotment.[16] This repetitive exclusion—in 1972, 1979, 1985, and 1992—can hardly be described as "inadvertent" or a "mistake."[17]

Despite Plaintiff's assertions to the contrary,[18] the United States has never recognized the legitimacy of the purported "implied right-of-way and easement by

---

[11] U.S. Mot. to Dismiss at 17.

[12] 1st Am. Compl. ¶ 1.

[13] *See* U.S. Mot. to Dismiss, Ex. B, ECF No. 15-2.

[14] *See* U.S. Mot. to Dismiss, Ex. C, ECF No. 15-3.

[15] 1st Am. Compl. ¶¶ 1, 20.

[16] *See* Ex. 2 (Radford Thomas Shannon, Land Patent for Lot 5, U.S. Survey 4982 (1972)); Ex. 3 (Choggiung Ltd., Land Patent for Lot 6, U.S. Survey 4982 (1979)); Ex. 4 (Herman E. Schroeder, Native Allotment for Lot 2, U.S Survey 7143 (1985)); *cf.* U.S. Notice of Compliance, Ex. A at 2 (showing relationship of lots to each other and the road).

[17] *See* Exs. 2-4; U.S. Mot. to Dismiss, Ex. B (Chaney allotment certificate (1992)).

[18] *See* 1st Am. Compl. ¶¶ 1, 5, 25, 29.

necessity." As described in the United States' motion to dismiss, "Shade did not receive a grant of right of way from the Bureau of Land Management (BLM) for this road and BLM never adjudicated whether the claimed road was a 'valid existing right.'"[19] ANILCA provides a specific process for individuals to file a protest with BLM before an allotment is certified, which requires BLM to then adjudicate that interest.[20] But the Shades failed to avail themselves of that process. The period of time for protesting the Chaney allotment has long since passed, and the United States has consistently affirmed that no legal mechanism exists for the relief Plaintiff seeks, the United States "has no ability to give the remedy sought by [Shade]," and the United States "lacks authority to correct any alleged error in Chaney's BLM-issued patent."[21] Plaintiff cannot now use this court to effect a taking of Ellamae Chaney's vested property right in her Native allotment and to open her allotment to unrestricted public access.

---

[19] U.S. Mot. to Dismiss at 2; *see id.* Ex. A, ECF No. 15-1 (*Shade v. Acting Alaska Reg'l Dir., Bureau of Indian Affairs*, 67 IBIA 15, 16, 20 (2019) (describing right-of-way as "purported" and "alleged")).

[20] 43 U.S.C. § 1634(a)(5)(C) ("[T]he Native allotment application shall be adjudicated pursuant to the requirements of the Act of May 17, 1906, as amended, if on or before the one hundred and eightieth day following December 2, 1980 . . . . A person or entity files a protest with the Secretary stating that the applicant is not entitled to the land described in the allotment application and that said land is the situs of improvements claimed by the person or entity.").

[21] *Shade*, 67 IBIA at 18, 20.

## III. STANDARD OF REVIEW

"It is a fundamental principle that federal courts are courts of limited jurisdiction," and these limits "must be neither disregarded nor evaded."[22]  If jurisdiction is challenged, the party claiming jurisdiction "has the burden of proving jurisdiction in order to survive the motion [to dismiss]."[23]  Under Rule 12(b)(1), a "jurisdictional attack may be facial or factual."[24]  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[25]  Here, the attack is facial because the allegations in Plaintiff's complaint are barred by the QTA and are therefore insufficient to invoke federal jurisdiction.[26]

Dismissal under Rule 12(b)(6) is proper when the plaintiff has failed to state a claim on which relief can be granted.[27]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief

---

[22] *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968 (9th Cir. 1981) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)); *id.* at 968-69 ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.").

[23] *Oertwich v. Traditional Vill. of Togiak*, 413 F. Supp. 3d 963, 966-67 (D. Alaska 2019) (quoting *Tosco Corp. v. Comtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)).

[24] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[25] *Id.*

[26] *Shearer v. Zinke*, No. 3:18-CV-0035-HRH, 2018 WL 5892354, at *5 (D. Alaska Nov. 9, 2018).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 6 of 26

that is plausible on its face.'"[28]  The claim for relief must have more than a "sheer possibility or conceivability,"[29] and must include more than "labels and conclusions."[30] Dismissal is proper "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."[31]  Here, both standards are met.

## IV.  ARGUMENT

### A. This Action Must Be Dismissed For Lack of Subject Matter Jurisdiction Under The QTA.

#### i.  The QTA is the only mechanism available to challenge the U.S.'s interest in real property.

It is well-established that all entities "are barred by federal sovereign immunity from suing the United States in the absence of an express waiver of this immunity by Congress."[32]  Accordingly, prior to the enactment of the QTA in 1972, "citizens asserting title to or the right to possession of lands claimed by the United States were 'without benefit of a recourse to the courts.'"[33]  To address this problem, Congress enacted the QTA to provide a *limited* waiver of sovereign immunity by the United States permitting suits "to

---

[28] *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678).

[29] *Id.*

[30] *In re Rigel Pharm., Inc. Sec. Litig.*, 679 F.3d 869, 875 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[31] *Zixiang Li*, 710 F.3d at 999.

[32] *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 280 (1983).

[33] *Id.* at 282 (citation omitted).

adjudicate title disputes involving real property in which the United States claims an interest."[34]  The legislative history of the QTA illustrates that its provisions were "carefully-crafted" to strike a delicate balance between private rights and "appropriate safeguards" for "the protection of the national public interest."[35]

In particular, while waiving the United States immunity from suit for quiet title actions, the QTA expressly provides that the waiver "does not apply to trust or restricted Indian lands."[36] This is because "[t]he Executive branch felt that a waiver of immunity in this area would not be consistent with 'specific commitments' it had made to the Indians through treaties and other agreements."[37]  In addition to barring quiet title actions for Indian lands, the QTA also bars *any* quiet title action "unless it is commenced within twelve years of the date upon which it accrued."[38]  This statute of limitations was included "to ensure that stale claims would not be opened up to litigation."[39]  Given these and other restrictions, the Supreme Court has held that "Congress intended the QTA to provide the *exclusive* means by which adverse claimants could challenge the United States' title to real

---

[34] *Id.* at 276; *see* 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . .").

[35] *Block*, 461 U.S. at 283-84.

[36] 28 U.S.C. § 2409a(a).

[37] *Block*, 461 U.S. at 283.

[38] 28 U.S.C. § 2409a(g) ("Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.").

[39] *Block*, 461 U.S. at 283.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 8 of 26

property."[40]  Accordingly, the "careful and thorough remedial scheme" of the QTA cannot be "circumvented by artful pleading."[41]

Yet that is exactly what Plaintiff seeks to do here.  Perhaps cognizant that a claim for relief under the QTA cannot succeed, the First Amended Complaint is notable in that it does not once mention or reference the QTA.  Instead, Plaintiff alleges that this Court has subject matter jurisdiction under a variety of other statutes, including the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201.[42]  As the United States describes in its Motion to Dismiss,[43] "a plaintiff cannot use the APA to end-run the QTA's limitations,"[44] and the DJA does not itself provide an independent source of jurisdiction.[45]  However Plaintiff seeks to frame his action, "the essence and bottom line" of the case is a quiet title action—i.e., "a suit by a plaintiff asserting a 'right, title, or interest' in real property that conflicts with a 'right, title, or interest' the United States claims."[46]

---

[40] *Id.* at 286 (emphasis added); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 223 (2012) ("In the QTA, Congress made a judgment about how far to allow quiet title suits—to a point, but no further.").

[41] *Block*, 461 U.S. at 285 (citation omitted).

[42] 1st Am. Compl. ¶ 13.

[43] U.S. Mot. to Dismiss 11-17.

[44] *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216.

[45] *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986).

[46] *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 215, 220.

In his own words, Plaintiff seeks: (1) a declaration that the Shannon Lake Road "is an implied right-of-way and easement by necessity appurtenant to the Shade allotment,"[47] (2) mandamus relief ordering the United States to "correct the document of conveyance of the Native allotment to Chaney to expressly state that it is subject to an easement and right-of-way of access to the Shade allotment,"[48] and (3) an injunction directing Ellamae Chaney to "sign, in recordable form, an acknowledgment that the [road], as it crosses the Chaney allotment, was and is a 'valid existing right' under ANILCA, to which the Chaney allotment is subject."[49] Plaintiff's arguments essentially boil down to the assertion that he has a property interest (i.e., a right-of-way and easement) in real property (Ellamae Chaney's Native allotment) that the United States holds an interest in (via a restraint on alienation).[50] And Plaintiff has filed suit to assert this alleged personal property interest.[51]

---

[47] 1st Am. Compl. ¶ 34(c).

[48] *Id.* ¶ 40(c).

[49] *Id.* ¶ 44(a).

[50] *See Alaska Dep't of Nat. Res. v. United States*, 816 F.3d 580, 585 (9th Cir. 2016) ("The QTA governs even when an adverse claimant . . . asserts ownership of less than a fee simple interest."); *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014) (QTA "applies to claims against the United States for rights of access, easements, and rights-of-way"); *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."); *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999) ("It is well settled that an easement is an interest in real property.").

[51] *Cf. Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 213, 220 (concluding claim did not arise under the QTA where plaintiff did not assert a personal property interest in the land at issue but instead claimed that the United States' decision to acquire the land in trust for a tribe violated the Indian Reorganization Act, 25 U.S.C. § 465).

That is the textbook definition of a "quiet title action," which is "universally understood to refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property."[52]   Plaintiff cannot avoid that inevitable conclusion simply by omitting the words "quiet title" from his complaint.

Plaintiff's claim is thus a quiet title action subject to the jurisdictional limitations of the QTA.[53]

### ii. The United States is immune from suit under the Indian lands exception to the QTA.

As described above, the QTA, while waiving the United States immunity from suit for quiet title actions, expressly provides that the waiver "does not apply to trust or restricted Indian lands."[54]   Therefore, "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the government's immunity."[55]

Plaintiff does not dispute that the Chaney allotment is "restricted Indian lands."[56] But even if he did, "[t]he QTA's limitations on actions challenging the United States'

---

[52] *Id.* at 217.

[53] *McMaster v. United States*, 731 F.3d 881, 899 (9th Cir. 2013) ("Despite th[e] caveat [in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*], it remains clear that under both Supreme Court precedent and our precedent that the QTA provides the exclusive remedy for claims involving adverse title disputes with the government.").

[54] 28 U.S.C. § 2409a(a).

[55] *United States v. Mottaz*, 476 U.S. 834, 843 (1986).

[56] *See* 1st Am. Compl. ¶ 20 (describing the land "as a restricted Native allotment to Chaney"); *see also* U.S Mot. to Dismiss at 8-9 & Ex. B (Chaney allotment "shall be deemed the homestead of the allottee and her heirs in perpetuity, and shall be inalienable and

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH        Page 11 of 26

assertions of title [to trust or restricted Indian lands] apply without regard to the ultimate validity of those assertions."[57]  Rather, the Indian lands exception applies *whenever* there is a "colorable" claim that the lands at issue are trust or restricted Indian lands,[58] and the United States is *not* "to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the government declares that it is the trustee for Indians."[59]  The government's assertion that a particular parcel is Indian land is colorable so long as it is "not undertaken in either an arbitrary or frivolous manner."[60]  As the Ninth Circuit recently concluded in *Alaska Department of Natural Resources v. United States*, "allotment certificates *alone* give rise to a colorable claim that the lands in question are restricted Indian lands."[61]

The only limited exception to this rule is if the party asserting an interest "can show that the [interests] it asserts were validly granted before the allotments were issued."[62]  But

---

nontaxable . . . ."); 25 C.F.R. § 152.1(c) ("Restricted land means land or any interest therein, the title to which is held by an individual Indian, subject to Federal restrictions against alienation or encumbrance."); *Cohen's Handbook of Federal Indian Law* § 16.03[1], at 1071 (Nell Jessup Newton ed., 2012) (describing a "restricted" allotment as one "owned by an Indian subject to a restriction on alienation in the United States or its officials").

[57] *State v. Babbitt*, 75 F.3d 449, 452 (9th Cir. 1995), *as amended* (Jan. 11, 1996), *as amended on denial of reh'g and reh'g en banc* (Mar. 19, 1996).

[58] *Id.* at 451-52.

[59] *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987).

[60] *Alaska Dep't of Nat. Res.*, 816 F.3d at 585 (citation omitted).

[61] *Id.* (emphasis added).

[62] *Id.*; *see also Wildman*, 827 F.2d at 1309 ("[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 12 of 26

this exception only applies if there is "*no dispute*" that the grant "had in fact been made."[63] Here, Plaintiff asserts "an implied right-of-way and easement by necessity," and claims that "[n]either the Regional Director's decision nor the IBIA order, on behalf of the Secretary, contested or questioned the merits of Plaintiff's claim."[64] But that is not correct. The IBIA decision in this matter agreed that the Chaney allotment certificate did not include "a reservation for the road right-of-way," but specifically declined to reach the merits of Plaintiff's claim that the omission was in error.[65] Declining to decide an issue for jurisdictional reasons is not the same as not contesting the merits of the issue. Plaintiff has not otherwise alleged an undisputed grant of a right-of-way or easement over Chaney's allotment—nor could he, because none exists.[66]

As recently described by the Ninth Circuit in *Alaska Department of Natural Resources* (affirming a decision of this District), resolving whether Plaintiff holds the purported right-of-way "would require a fact-intensive inquiry into the nature and character

---

strictly observed, and exceptions thereto are not to be lightly implied." (quoting *Block*, 461 U.S. at 287)).

[63] *Alaska Dep't of Nat. Res.*, 816 F.3d at 585 (emphasis added).

[64] 1st Am. Compl. ¶ 29.

[65] *Shade*, 67 IBIA at 20 ("Whether or not BLM erred in omitting the reservation, 'it is a long-established principle that patenting the land out of Federal ownership divests the Department of jurisdiction to determine the rights of parties to that land, including recognition of conflicting claims to th[at] land[].'" (alterations in original) (citation omitted)); *id.* at 20 n.9 ("[E]ven were we to assume for the sake of argument that [Shade] holds the purported right-of-way, it would not follow that [he] could obtain such relief.").

[66] *Cf. Alaska v. Babbitt*, 182 F.3d 672, 673, 676-77 (9th Cir. 1999) (undisputed that a material site right-of-way had been granted to state through federal highway statute).

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH     Page 13 of 26

of [Plaintiff's] use" of the Shannon Lake Road,[67] likely beginning when Henry Shade first began the use and occupancy of his allotment. But "even accepting as true all of [Plaintiff's] factual allegations concerning the nature and character of [the] use that occurred," there is *not* a "clear and undisputed grant from the federal government to [Shade] of an interest in [Chaney's] allotment[]."[68] As Plaintiff specifically states in his complaint, the "Shade allotment lacks legally recognized access across the Chaney allotment."[69] The United States therefore has far more than "a colorable claim that the lands in question are restricted Indian lands."[70]

Ellamae Chaney's title remains subject to restraints on alienation and is protected by the United States' trust responsibility to allotment holders. When the United States certified Ellamae Chaney's allotment, it expressly reserved a right-of-way "for ditches or canals constructed by the authority of the United States" and also reserved "[a]ll the oil and gas in the land."[71] Accordingly, if other valid rights had existed, the United States knew

---

[67] *Alaska Dep't of Nat. Res.*, 816 F.3d at 585-86.

[68] *Id.*

[69] 1st Am. Compl. ¶ 2.

[70] *Alaska Dep't of Nat. Res.*, 816 F.3d at 586.

[71] U.S. Mot. to Dismiss, Ex. B at 2.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH      Page 14 of 26

how to and would have reserved them.[72]  Any rights of way beyond those listed on Ellamae Chaney's allotment certificate are both disputed and factually unproven.[73]

Because the Native allotment owned by Ellamae Chaney is restricted Indian land, the QTA does not waive the United States' sovereign immunity.  This Court therefore lacks jurisdiction to entertain Plaintiff's quiet title claims concerning purported rights-of-way over the Chaney allotment.

### iii.  Plaintiff's claim is barred by the QTA's statute of limitations.

As discussed above, for actions that are not barred by the QTA's Indian lands exception, "Congress has consented to a suit challenging the Federal Government's title to real property only if the action is brought within the 12-year period set by the Quiet Title Act."[74]  This limitation "reflects a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claim to real property, whatever the merits of those challenges."[75]  A cause of action under the QTA "shall be

---

[72] *See generally Fitzgerald Living Tr. v. United States*, 460 F.3d 1259, 1265 (9th Cir. 2006) ("[U]nless the language in a land grant is clear and explicit, the grant will be construed to favor the government so that nothing passes by implication.").

[73] Ms. Chaney's allotment is described as "Lot 6, U.S. Survey No. 7143, Alaska, situated along the Lake Aleknagik road approximately 3 miles northwesterly of Dillingham, Alaska."  U.S. Mot. to Dismiss, Ex. B at 1.  U.S. Survey No. 7143 does not show the Shannon Lake Road that Plaintiff now claims a right to.  *See* U.S. Notice of Compliance, Ex. B at 2.

[74] *United States v. Mottaz*, 476 U.S. 834, 851 (1986).

[75] *Id.*; *see also Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1196 (9th Cir. 2008) ("The Supreme Court has already held that Congress intended the QTA's limitations period to serve interests of finality, and therefore it may not be tolled."  (citing, *inter alia*, *Block*, 461 U.S. at 283-85)).

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH       Page 15 of 26

deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."[76]

Accordingly, the applicable date of accrual here is when either Plaintiff or his father Henry Shade knew or should have known of this claim. At the very latest, Henry Shade had record notice and should have been aware that he did not have a valid right-of-way or easement to the Shannon Lake Road—assuming Henry Shade himself ever actually sought such an interest—when the United States conveyed Ellamae Chaney her Native allotment in 1992 and recorded her allotment certificate.[77] Further, as described in the IBIA decision underlying this matter, "[t]he purported right-of-way has apparently been a subject of dispute between the owners of the neighboring allotments for several decades."[78] It is therefore clear that even if the Indian lands exception did not apply—which it does—the time within which Plaintiff could have brought a quiet title action has long since passed. And because "the statute of limitations in the QTA [is] jurisdictional," Plaintiff's complaint must be dismissed for this additional reason.[79]

---

[76] 28 U.S.C. § 2409a(g).

[77] *See* U.S. Mot. to Dismiss, Ex. B; *Kingman Reef Atoll Invs.*, 541 F.3d at 1198 ("[T]he QTA limitations period accrues as soon as the United States makes a 'claim that creates even a cloud on' a plaintiff's ownership interest." (citations omitted)).

[78] *Shade*, 67 IBIA at 16.

[79] *Fid. Expl. & Prod. Co. v. United States*, 506 F.3d 1182, 1186 (9th Cir. 2007); *see also Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005) ("If the statute of limitations has run on a waiver of sovereign immunity, federal courts lack jurisdiction.").

### iv.   The United States is a necessary and indispensable party.

"A proceeding against property in which the United States has an interest is a suit against the United States."[80]  That includes Native allotments such as Ellamae Chaney's, because the United States' restraint on alienation "is not a dry legal title divorced from substantial powers and responsibilities with relation to the land."[81]  Further, "an alienation of the Indian's interest in the lands by judicial decision in a suit to which the United States is not a party has no binding effect."[82]  As the Supreme Court has long held, the United States is thus "an indispensable party to any suit to establish or acquire an interest in [Indian] lands."[83]

Under this settled law, the Ninth Circuit has invalidated condemnation of Indian land that occurred decades before.[84]  In 1921, the City of Tacoma condemned perpetual easements over Native allotments for a public project, but the United States was not a party to the proceedings.[85]  The Ninth Circuit concluded that the state court had "lacked jurisdiction to condemn the five Indian allotments in which the United States continued to

---

[80] *State of Minnesota v. United States*, 305 U.S. 382, 386 (1939).

[81] *Id.* at 386 n.1.

[82] *Id.*

[83] *Id.*; *see also United States v. Hellard*, 322 U.S. 363, 368 (1944) ("[T]he United States has long been considered a necessary party to [restricted Indian lands] proceedings in view of the large governmental interests which are at stake. We will not infer from a mere grant of jurisdiction to a state or federal court to adjudicate claims to restricted lands . . . that Congress dispensed with that long-standing requirement.").

[84] *United States v. City of Tacoma, Wash.*, 332 F.3d 574, 575 (9th Cir. 2003).

[85] *Id.* at 576.

hold a valid property interest, and the proceedings [we]re therefore void."[86]   The court acknowledged that even though the City of Tacoma had long thought these land transfers were settled, it was bound by Supreme Court precedent to "hold that the conveyances of the five allotments were invalid."[87]

This long-standing rule has consistently been applied to actions under the QTA. Because the QTA "expressly excluded Indian trust lands from [its] waiver of immunity," the "[i]nability to join the United States as an indispensable party must result in dismissal."[88]   This District recently considered this rule in *Alaska Department of Natural Resources*, and concluded:

> (1) Alaska Native allotments are 'trust or restricted Indian lands'; (2) The United States is an indispensable party to the State's claims against the Alaska Native allotments held by Agnes and Anne Purdy; (3) The United States has not waived it[s] sovereign immunity; (4) This Court lacks subject matter jurisdiction over the claims of the State of Alaska to the extent they seek to establish an interest in the Alaska Native allotments.[89]

---

[86] *Id.* at 581.

[87] *Id.* at 575, 582.

[88] *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1272 n.4 (9th Cir. 1991); *see also Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) ("[T]he United States is a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation. . . . Although Congress has authorized the United States to be joined as a party defendant in certain property disputes without particularized consent, this authority specifically excludes Indian lands in which title is held by the United States."); *Mannatt v. United States*, 951 F. Supp. 172, 175 (E.D. Cal. 1996) ("The United States is an indispensable party to any suit brought to establish an interest in Indian trust land."), *aff'd*, 185 F.3d 868 (9th Cir. 1999).

[89] *See Alaska v. United States*, No. 4:13-CV-00008-RRB, 2013 WL 12214383, at *4 (D. Alaska Dec. 23, 2013), *aff'd in part, vacated in part on other grounds, remanded sub nom.*, 816 F.3d 580.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 18 of 26

The Ninth Circuit agreed, concluding that the United States was a necessary party to the State's quiet title claim to establish rights-of-way over two Native allotments.[90] And because the United States was immune from suit under the QTA, the Ninth Circuit affirmed dismissal of the action for lack of subject matter jurisdiction.[91]

This rule is both logical and necessary to uphold the purpose of the Indian lands exception. As described in the legislative history of the QTA, the Justice Department proposed the Indian lands exception because,

> The Federal Government's trust responsibility for Indian lands is the result of solemn obligations entered into by the United States Government. The Federal Government has over the years made specific commitments to the Indian people through written treaties and through informal and formal agreements. The Indians, for their part, have often surrendered claims to vast tracts of land. [The President] has pledged his administration against abridging the historic relationship between the Federal Government and the Indians without the consent of the Indians.[92]

If the United States were not an indispensable party when it has, as here, "assert[ed] its immunity on behalf of land of which the government declares that it is the trustee for Indians,"[93] then the Indian lands exception would be operationally defunct.

---

[90] *Alaska Dep't of Nat. Res.*, 816 F.3d at 584.

[91] *Id.* at 586.

[92] H.R. Rep. No. 92-1559, at 13 (1972).

[93] *Wildman*, 827 F.2d at 1309; *see also Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) (noting "that when the necessary party is immune from suit," there is "little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor" (quoting *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991))); *Washoe Tribe of Nev. & Cal. v. Brooks*, 175 F. Supp. 2d 1255, 1258 (D. Nev. 2001) ("[W]hen a necessary party is immune from suit there

The only limited exception to this rule is "in a suit by an Indian tribe to protect its interest in tribal lands."[94]  The so-called "*Puyallup* exception" makes sense: it promotes tribal sovereignty and self-determination and ensures that tribes are able to protect their own land without being constrained by the inability to join the United States.  Accordingly, the United States is indispensable where litigation is instituted "for the purpose of effecting the alienation of tribal or restricted lands," but the United States is not indispensable if "individual Indians or a tribe [are] seeking to protect Indian land from alienation."[95]  In other words, whether the exception applies typically depends on whether the tribe or individual "is the plaintiff or the defendant in any given suit."[96]

The Ninth Circuit recently constrained this already limited exception even further, so that even in cases where the tribe is the plaintiff, the United States is indispensable if the plaintiff tribe's position is adverse to the interests of the United States or if the United States interests are not "shared and adequately represented" by the plaintiff tribe.[97]  Here,

---

is little need for balancing the Fed. R. Civ. P. 19(b) factors because 'immunity itself may be viewed as the compelling factor.'" (citation omitted)).

[94] *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254 (9th Cir. 1983).

[95] *Id.* at 1254 n.1.

[96] *Id.*; *see also Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1069 (9th Cir. 2010) ("Although an action to establish an interest in Indian lands held by the United States in trust generally may not proceed without it, that rule does not apply where the *tribe* has filed the claim to protect its own interest.").

[97] *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 1002 (9th Cir. 2011) (distinguishing *Puyallup Indian Tribe*, 717 F.2d 1251 and *Lyon*, 626 F.3d 1059).

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 20 of 26

where Plaintiff's interests are clearly adverse to the United States, and the United States' actions form a central part of the underlying dispute, the United States is indispensable.[98]

And as described in Plaintiff's complaint, Ellamae Chaney has consistently sought to avoid involvement in the adversary proceedings initiated by Plaintiff and has never instituted any sort of independent action to protect her Native allotment from Plaintiff's attempted alienation.[99] Until now, Ellamae Chaney has solely relied on the United States' trust duty to safeguard her interests in her allotment.[100] Because Ellamae Chaney is the defendant, and Shade initiated this adversary proceeding to alienate Ellamae Chaney's restricted Native allotment, the United States is an indispensable party.

The United States is also indispensable because this Court "could not accord complete relief to Plaintiff in the absence of the United States."[101] Because the Chaney allotment is subject to a restriction against alienation, "any interest therein[] may not be

---

[98] *See* 1st Am. Compl. ¶¶ 37, 40 (requesting this court to declare that the United States violated its trust duty and erred in refusing to acknowledge the purported easement, and to order the United States to effect a taking of a Native allotment).

[99] *See, e.g.*, 1st Am. Compl. ¶¶ 24, 26-27; *cf. Lyon*, 626 F.3d at 1069-71 (although tribe was the defendant, tribe had "effectively initiated th[e] litigation by filing a proof of claim in the bankruptcy court contesting the [plaintiff's] title and access rights to [the land at issue]," including asserting "authority to impose 'zoning and water use restrictions'" and seeking "relief for previous trespasses").

[100] U.S. Mot. to Dismiss at 4 n.3 ("The United States is . . . representing Chaney's interest. . . . Chaney has retained counsel who has filed an entry of appearance in this case [to represent her personally].").

[101] *Paiute-Shoshone Indians*, 637 F.3d at 998.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH     Page 21 of 26

conveyed without the approval of the Secretary."[102]   So this Court cannot, as Plaintiff requests, order Ellamae Chaney to "sign, in recordable form" a transfer of an interest in her allotment without the Secretary first approving the transfer.[103]   Accordingly, "[t]o achieve the relief that [he] seeks, Plaintiff would require an additional order, . . . requiring the United States" to approve the transfer.[104]   But before this Court "could bind the United States by such an order, the United States must be a party."[105]

Because the United States is thus an indispensable party to this action, and the United States is immune from suit, this action must be dismissed in its entirety.[106]

### B.  Plaintiff Has Failed To State A Claim For Relief Under 43 U.S.C. § 1746.

Even if this Court had jurisdiction (which it does not), Plaintiff has failed to state a claim on which relief can be granted.  Plaintiff claims that Ellamae Chaney's allotment certificate may be "corrected" under 43 U.S.C. § 1746 and its implementing regulations.[107]   Section 1746 provides that "[t]he Secretary may correct patents or documents of conveyance . . . relating to the disposal of public lands where necessary in order to

---

[102] 25 C.F.R. § 152.22; *id.* § 152.17 ("[T]rust or restricted lands acquired by allotment . . . may be sold, exchanged, and conveyed by the Indian owner *with the approval of the Secretary* or by the Secretary *with the consent of the Indian owner*." (emphasis added)).

[103] *See* 1st Am. Compl. ¶ 44(a).

[104] *Paiute-Shoshone Indians*, 637 F.3d at 998.

[105] *Id.*

[106] U.S. Mot. to Dismiss at 2 ("Given that there is no jurisdictional basis for this court, the amended complaint should be dismissed as to all parties.").

[107] 1st Amend. Compl. ¶¶ 5, 37, 40.

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH        Page 22 of 26

eliminate errors." But this authority is entirely discretionary—not mandatory.[108] It also

*cannot* be exercised without the express *consent* of the patentee—here, Ellamae Chaney.[109]

The purpose of § 1746 and its implementing regulations is to enable a patentee to

seek administrative correction *of their own patent.* It was not designed to enable

landowners to alter the vested property rights of their neighbors.[110] This is apparent by the

very structure of the application process described in the regulations for correcting a

---

[108] *See* 43 C.F.R. § 1865.0-1 (Section 1746 "affords to the Secretary of the Interior *discretionary authority* to correct errors in patents and other documents of conveyance" (emphasis added)); *id.* § 1865.0-3 (Section 1746 "authorizes the Secretary of the Interior to correct patents and other documents of conveyance . . . where the Secretary of the Interior *deems it necessary or appropriate to do so* in order to eliminate errors" (emphasis added)).

[109] *Shade*, 67 IBIA at 19 ("[T]o the extent the Department is authorized to issue a corrected patent under section 316 of FLPMA, 43 U.S.C. § 1746, the authority to do so rests with BLM, not BIA, and would require Chaney's consent."); *see also City of N. Las Vegas*, 178 IBLA 377, 384 n.9 (Feb. 24, 2010) ("An additional principle applies in this case because the City is not the patentee. Where a party who is not the patentee seeks administrative correction of a patent, the Department cannot proceed with a patent correction without the consent of the patentee whose rights would be affected."); *Lone Star Steel Co.*, 101 IBLA 369, 373 (Mar. 29, 1988) ("A patent may not be administratively corrected against the wishes of the patentee. . . . A patent correction initiated by the authorized officer cannot be imposed over the landowner's objections. Without the consent of the affected landowner, . . . BLM cannot change the patent in question." (citation omitted)); *Rosander Mining Co.*, 84 IBLA 60, 60 (Nov. 30, 1984) ("Where the party seeking reformation is not the holder of the patent, the provision may not be applied without consent and surrender of the patent document by the patentee."); 43 C.F.R. § 1865.3 ("The authorized officer may initiate and make corrections in patents or other documents of conveyance on his/her own motion, *if all existing owners agree*." (emphasis added)).

[110] *See Wood v. United States*, No. CIV. S-04-0897 DAD, 2006 WL 2829829, at *3 (E.D. Cal. Sept. 29, 2006) (dismissing argument that § 1746 "permit[ted] the BLM to retrospectively change the conveyance documents [of adjacent landowner] to include the rights of way that, according to plaintiffs, were mistakenly omitted from those documents").

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH      Page 23 of 26

conveyance document. First, a "claimant asserting ownership of lands described in and based upon a patent or other document of conveyance containing an alleged error may file an application to correct the alleged error."[111] The application must include "[a]ll documents which show *the applicant's title* to the lands included in the application," and "[a] certified copy of any patent or other document conveying any lands included in the application *to the applicant* or predecessor(s) in interest."[112] And to have a patent corrected, the applicant must "surrender the original patent or other document of conveyance to be corrected."[113] An applicant cannot a surrender a patent that they do not have. Accordingly, by its own terms, § 1746 and its regulations simply do not apply to the situation presented here and do not offer Plaintiff any legal mechanism to obtain the relief he seeks. Perhaps that is why he has never attempted to avail himself of this administrative process.

Plaintiff could certainly file an application to seek to correct *his own* allotment certificate if there were a mistake of fact in his property description. But "errors" in one's own allotment certificate that can be corrected through this process are "limited to mistakes of fact and not of law."[114] Whether a purported implied right-of-way and easement by

---

[111] 43 C.F.R. § 1865.1-1.

[112] *Id.* § 1865.1-2(c)(2)-(3) (emphasis added).

[113] *Id.* § 1865.1-3.

[114] *Id.* § 1865.0-5(b).

necessity may exist across a neighboring allotment is not the kind of "error" contemplated by this correction process.[115]

Section 1746 simply does not create a process for the Secretary to unilaterally "correct" Ellamae Chaney's allotment certificate without her consent. Because Plaintiff has therefore not stated a claim upon which relief may be granted, this action must also be dismissed under Rule 12(b)(6).

## V.    CONCLUSION

Because Ellamae Chaney's Native allotment is "restricted Indian lands," the United States is an indispensable party to any action seeking to alienate Ellamae Chaney's interests in her allotment. But the United States is immune from suit under the QTA. This Court therefore does not have subject matter jurisdiction over this action, and Plaintiff's complaint must be dismissed in its entirety. Plaintiff has also failed to state a claim for relief under 43 U.S.C. § 1746, and therefore this action must also be dismissed under Rule 12(b)(6).

---

[115] *Cf. Foust v. Lujan*, 942 F.2d 712, 715-16 (10th Cir. 1991) (permitting patentee, who applied for a patent correction, to correct their own patent based on a mistake of fact because patent misdescribed the land, and "[i]t was not until 1979, when the area was resurveyed by modern surveying standards, that anyone was able to determine with certainty that the entry had been made on the SW ¼ NE ¼, rather than the NE ¼ SE ¼").

RESPECTFULLY SUBMITTED this 5th day of March 2021 at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
MILLER & MONKMAN, LLP

By:  */s/ Roger W. DuBrock*
Roger W. DuBrock
Alaska Bar No. 6803011
K. Amanda Saunders
AK Bar No. 2007066

*Attorneys for Defendant Ellamae Chaney*

**Certificate of Service**

I certify that on March 5, 2021, a copy of the foregoing document was served electronically on:

Russell L. Winner
rwinner@winnerlaw.com

Steven E. Skrocki
Steven.Skrocki@usdoj.gov

*/s/ Roger W. DuBrock*
Roger W. DuBrock

*Shade v. U.S. Dep't of Interior et al.*, Case No. 3:20-cv-00198-HRH          Page 26 of 26