WO                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF ALASKA


KENNETH H. SHADE,                       )
                                        )
                    Plaintiff,          )
                                        )
    vs.                                 )
                                        )
UNITED STATES DEPARTMENT OF THE         )
INTERIOR, et al.,                       )
                                        )       No. 3:20-cv-0198-HRH
                    Defendants.         )
_____)


O R D E R

Motion to Dismiss

The United States moves to dismiss plaintiff's first amended complaint.[1] Defendant Ellamae Chaney joins in the motion to dismiss.[2] The motion to dismiss is opposed.[3] Oral argument was not requested and is not deemed necessary.

_____

[1]Docket No. 15.

[2]Docket No. 22.

[3]Docket No. 31. Plaintiff also filed a "cross-motion for partial summary judgment" at Docket No. 31. However, briefing on plaintiff's cross-motion has been stayed pending resolution of the instant motion to dismiss. Docket No. 41.

-1-

Background

Plaintiff is Kenneth H. Shade. Defendants are the United States Department of the Interior; Deb Haaland, Secretary of the Interior; Eugene R. Peltola, Jr., Director of the Alaska Region of the Bureau of Indian Affairs; and Ellamae A. Chaney. Haaland and Peltola are sued in their official capacities.[4]

Plaintiff alleges that he is "an Alaska Native" and that he is "the devisee of a portion of a restricted Native allotment ('Shade allotment') from his father, Henry Shade, who died testate on March 28, 2009."[5] Plaintiff alleges that "[t]he Shade allotment is located within the boundaries of the City of Dillingham, Alaska[.]"[6] Plaintiff alleges that "[t]he Shade allotment was conveyed by BLM to Henry Shade on September 23, 1976."[7] Plaintiff alleges that "[t]o gain access to what would be his allotment, in the 1960s Henry Shade built and maintained a dirt road approximately one mile in length from Aleknagik Lake Road to his allotment ('Shade access road'), which access road is now informally called Shannon Lake Road."[8]

---

[4]First Amended Complaint [etc.] at 6, ¶¶ 10-11, Docket No. 14.

[5]Id. at 7, ¶ 16.

[6]Id. at 7, ¶ 17.

[7]Id.

[8]Id. at 8, ¶ 18.

Plaintiff alleges that per the terms of Henry Shade's will, he was "to receive a house on the Shade allotment and ten acres of land surrounding it."[9] Plaintiff alleges that his brother was "to receive the remainder of the allotment, which is largely undeveloped."[10] Plaintiff alleges that "[i]n the course of subdividing the Shade allotment for conveyance to each brother, . . . [the] surveyor learned that BLM had mistakenly forgotten to include an express reservation of a right-of-way for the Shade access road where it crossed the land" that was conveyed to defendant Chaney in 1992.[11] Plaintiff alleges that "[t]his omission was inadvertent because BLM knew from its field work that the Shade access road was built before Chaney began the use and occupancy of her allotment site and that the road was necessary to access . . . the Shade allotment."[12] Plaintiff alleges that "[t]he road [is] the only practicable access to the Shade allotment."[13]

Plaintiff alleges that "[b]ecause of the lack of recognized legal access over the Chaney allotment to the Shade allotment, the subdivision of the Shade allotment and the Henry Shade probate have been put on hold, and [p]laintiff has not been able to receive title to his portion

---

[9]Id. at 8, ¶ 19.

[10]Id.

[11]Id. at 8, ¶ 20.

[12]Id. at 8-9, ¶ 20.

[13]Id. at 2, ¶ 1. Chaney disputes that the access road is the only practicable means of access to the Shade Allotment but contends that this dispute "is both irrelevant to and beyond the scope of the legal issues presented in this motion to dismiss." Joinder in Motion to Dismiss and Additional Supporting Memorandum at 2, Docket No. 22.

of the Shade allotment."[14] Plaintiff alleges that he "asked Chaney to acknowledge that the Shade access road, as it crosses her allotment, was and is a 'valid existing right' under ANILCA, to which her allotment is subject."[15] Plaintiff alleges that "Chaney has refused to do so."[16]

Plaintiff alleges that in May 2017, he sought to have the Bureau of Indian Affairs (BIA) Regional Director "recognize that the Shade access road, as it crosses the Chaney[] allotment, was and is an implied right-of-way and easement by necessity appurtenant to the Shade allotment, and thus was and is a 'valid existing right' under ANILCA, to which the Chaney allotment is subject."[17] Plaintiff alleges that he "asked the Regional Director, in the exercise [of his] trust duty to [p]laintiff, to take appropriate action to prevent future trespass on that right-of-way."[18] Plaintiff alleges that "[a]lthough the Regional Director did not dispute [p]laintiff's right to use the Shade access road as it crosses the Chaney allotment, the Regional Director refused to affirmatively acknowledge that right, stating that []he lacked the authority to do so."[19]

---

[14]First Amended Complaint [etc.] at 9, ¶ 21, Docket No. 14.

[15]Id. at 9, ¶ 22.

[16]Id.

[17]Id. at 10-11, ¶ 23.

[18]Id. at 11, ¶ 23.

[19]Id. at 11, ¶ 25.

Plaintiff alleges that he appealed the Regional Director's decision to the Interior Board of Indian Appeals (IBIA).[20] Plaintiff alleges that in December 2019, the IBIA dismissed his appeal, "agree[ing] with the Regional Director that []he lacked the authority to recognize the Chaney access road as [a] 'valid existing right' under ANILCA."[21]

On August 12, 2020, plaintiff commenced this action for declaratory judgment, injunctive relief, and damages. On January 29, 2021, plaintiff filed his first amended complaint. Plaintiff's first amended complaint contains five counts. Count I contains declaratory judgment claims asserted against the Secretary and Chaney. Count II contains declaratory judgment claims asserted against the Secretary only. Count III contains claims for mandamus or injunctive relief against the Secretary. Count IV contains claims for injunctive relief against Chaney. Count V is a claim for damages against Chaney. Plaintiff alleges that this court has jurisdiction of his claims pursuant to "28 U.S.C. § 1331 (federal question); 5 U.S.C. §§ 701-706 (review of agency action); 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 1361 (action in the nature of mandamus); 28 U.S.C. § 2202 (injunctive relief); and 28 U.S.C. § 1367 (supplemental jurisdiction)."[22]

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, the United States moves to dismiss Counts I, II, and III of plaintiff's first amended complaint for lack of subject

---

[20]Id. at 11, ¶ 26.

[21]Id. at 12, ¶ 28.

[22]Id. at 7, ¶ 13.

matter jurisdiction. Alternatively, pursuant to Rule 12(b)(6), the United States moves to dismiss plaintiff's claims because they are barred by the statute of limitations. Defendant Chaney joins in the United States' motion to dismiss and also raises a Rule 12(b)(6) argument that plaintiff has failed to state a claim for relief under 43 U.S.C. § 1746.

Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The United States is making a facial attack here. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. In considering a facial challenge, the court is generally confined to the allegations in the complaint and "assumes the truth of [the] plaintiff's factual allegations and draws all reasonable inferences in its favor." Ecological Rights Foundation v. Pacific Gas and Elec. Co., 803 F. Supp. 2d 1056, 1059 (N.D. Cal. 2011). But, the court may also consider "'additional facts . . . contained in materials of which the court may take judicial notice'" without converting a facial attack into a factual attack. Id. (quoting Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001).

"The federal government cannot be sued unless it first waives sovereign immunity." State v. United States Dep't of State, 996 F.3d 552, 564 (9th Cir. 2021). "The doctrine of

sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). "Whether the government waives its sovereign immunity is a question of subject matter jurisdiction." Blue v. Widnall, 162 F.3d 541, 544 (9th Cir. 1998). "As the contours of any such waiver define a court's authority to entertain a suit against the government, each claim against the government must rest upon an applicable waiver of immunity." Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1167–68 (9th Cir. 2017) (internal citation omitted).

The United States argues that it has not waived its sovereign immunity as to plaintiff's claims against it because all of plaintiff's claims put at issue the adjudication of the validity of plaintiff's contention that he has an easement across Chaney's Native allotment. The United States contends that "the only means to have a right of way recognized across lands in which the United States holds an interest is the Quiet Title Act (QTA)."[23] "The QTA waives the United States' immunity with respect to claims covered by that statute, but the statute excludes from its coverage claims involving 'trust or restricted Indian lands.'" Alaska Dep't of Natural Resources v. United States, 816 F.3d 580, 585 (9th Cir. 2016) (Purdy) (quoting 28 U.S.C. § 2409a(a)). "This exclusion, known as the Indian lands exception, preserves the United States' immunity from suit 'when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands.'" Id. (quoting United States v. Mottaz, 476 U.S. 834, 843 (1986)).

---

[23] Motion to Dismiss at 4, Docket No. 15.

There can be no dispute that the Chaney Native allotment is restricted Indian land. Chaney received her allotment under the Alaska Native Allotment Act[24] and such an allotment is "considered 'restricted' by virtue of the restraint on alienation contained in the allotment certificate[]." Id. The dispute here focuses on whether plaintiff's claims against the United States fall within the purview of the QTA. If they do, then there has been no waiver of sovereign immunity and the claims are subject to dismissal.

The QTA, "[f]rom its title to its jurisdictional grant to its venue provision, . . . speaks specifically and repeatedly of 'quiet title' actions." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 217 (2012). "That term is universally understood to refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property." Id. The Ninth Circuit "has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA." Robinson v. United States, 586 F.3d 683, 686 (9th Cir. 2009).

To determine whether plaintiff's claims against the United States fall within these parameters, a closer look at his claims is required. Plaintiff has set out his claims against the United States in three counts (Counts I, II, and III).

---

[24]Exhibit B, Motion to Dismiss, Docket No. 15.

In Count I, plaintiff seeks a declaration that:

> a. The Shade access road, which crosses the Chaney allotment, was built by Henry Shade before Chaney began the use and occupancy of her allotment. This road is the only practicable means of access to the Shade allotment.
> b. The conveyance of the Chaney allotment was made subject to "valid existing rights," under Section 905(a)(1) of ANILCA, 43 U.S.C. § 1634(a)(1).
> c. The Shade access road, as it crosses the Chaney allotment, was and is an implied right-of-way and easement by necessity appurtenant to the Shade allotment. Accordingly, this was and is a "valid existing right" under ANILCA, to which the Chaney allotment is subject, even though that right-of-way was not expressly reserved in the Chaney allotment certificate.
> d. Any interference or threatened interference by Chaney with that right-of-way and easement constitutes a continuing trespass on its use.[25]

In this count, plaintiff seeks to assert the validity of his road as an encumbrance on Chaney's Native allotment. In other words, "the essence and bottom line" of this count is a title dispute. Match-E-Be-Nash-She-Wish Band, 567 U.S. at 220 (citation omitted). This count plainly falls within the purview of the QTA, which means the United States has not waived its sovereign immunity as to the claims asserted against it in Count I.

Plaintiff's "valid existing rights" claim cannot save his Count I. This claim is based upon plaintiff's prior construction of a road across public domain which he contends is "an implied right-of-way and easement by necessity" across the Chaney allotment.[26] Plaintiff contends that if he can show that the Chaney allotment was subject to the easement of

---

[25]First Amended Complaint at 14, ¶ 34, Docket No. 14.

[26]Id. at 3, ¶ 3.

-9-

necessity for the road prior to the land being conveyed to her, that would mean that the United States has no colorable claim to the land at issue and the QTA would not apply.

But, "[a]s long as the United States has a 'colorable claim' to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit." State of Alaska v. Babbitt, 75 F.3d 449, 451–52 (9th Cir. 1995) (Foster) (quoting State of Alaska v. Babbitt, 38 F.3d 1068, 1076 (9th Cir. 1994) (Albert)). And, here, the United States has a colorable claim to a property interest in the Indian lands in question. The United States does not have to prove that it has title to the land in the question. "The QTA's limitations on actions challenging the United States' assertions of title apply without regard to the ultimate validity of those assertions." Albert, 38 F.3d at 1076. The United States' colorable title prevails in absence of proof that – as a matter of law – plaintiff's easement has been granted by the United States. "'Nothing in the [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the government declares that it is the trustee for Indians.'" Id. (quoting Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir. 1987)). Here, the United States has rationally determined to assert its reserved interest in the Chaney allotment: the restriction on Chaney's right to alienation.

The situation in this case is not like that in State of Alaska v. Babbitt, 182 F.3d 672 (9th Cir. 1999) (Bryant). There, "[t]he United States issued a 500 acre grant to the State of

-10-

Alaska in 1961. The grant was of a right of way for a material site to mine gravel." Id. at 673. "In 1970, appellee William T. Bryant filed an application for an Alaska Native allotment, the relevant portion of which [was] within the 1961 grant to the state." Id. The "substantive question" before the court of appeals was "whether Bryant's use and occupancy entitled him to take priority over the state's earlier grant." Id. But first, the appeals court had to determine "whether the district court had jurisdiction to decide that substantive question." Id. As to the jurisdictional question, because of a change in agency policy, Bryant no longer had a "colorable claim" to the land at issue, which meant that the United States also had no colorable claim that the land at issue was Indian land. Id. at 675-76. Because the case did not involve Indian lands, the Indians lands exception to the QTA did not apply, "and there [was] jurisdiction under the Quiet Title Act." Id. at 676.

But here, the United States has not disabled itself from granting Chaney's Native allotment by reason of an earlier appropriation of the same land in favor of the State. Even if plaintiff's road constitutes a valid, existing right across the land which was allotted to Chaney, there has been no prior appropriation of the land which became Chaney's allotment, to plaintiff or anyone else. In other words, the United States continues to have a colorable claim of title to the lands in question, which are undisputedly Indian lands. As in Purdy, 816 F.3d at 585-86, even if plaintiff's easement claims have factual potential (even if plaintiff has the better of the factual argument), the United States has a colorable claim to title to the lands in question, which means that "the QTA renders the government immune"

-11-

from the claims asserted against it in Count I. Foster, 75 F.3d at 452. Thus, the court lacks subject matter jurisdiction as to plaintiff's claims in Count 1. The claims asserted against the federal defendants in Count I are dismissed.

In Count II, plaintiff seeks review of the IBIA's December 4, 2019 decision. Count II contains APA claims even though plaintiff has labeled these claims as claims for declaratory judgment. In Count II, plaintiff seeks a declaration that:

> a. The Secretary has a trust duty to [p]laintiff, as an Alaska Native inheriting a portion of a restricted Native allotment, to protect [p]laintiff's rights in that allotment.
> b. The Secretary erred in deciding that [she] lacked the authority to recognize that the Shade access road, as it crosses the Chaney allotment, was and is a 'valid existing right' under ANILCA, to which the Chaney allotment is subject.
> c. The Secretary erred in deciding that [she] lacked the authority to take appropriate action to prevent Chaney from interfering with or committing trespass on the right to use of that road.
> d. The Secretary erred in deciding that [she] lacked the authority under 43 U.S.C. § 1746 to correct the document of conveyance of the Native allotment to Chaney to expressly state that it is subject to an easement and right-of-way of access to the Shade allotment.[27]

Although Section 702 of the APA provides a general waiver of sovereign immunity for APA claims, it does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. As the Supreme Court has explained, "the QTA specifically authorizes quiet title actions . . .

---

[27]Id. at 15-16, ¶ 37.

except when they involve Indian lands. . . . In such a circumstance, a plaintiff cannot use the APA to end-run the QTA's limitations." Match-E-Be-Nash-She-Wish Band, 567 U.S. at 216. In Counts II(a) and (d), plaintiff is not attempting to "circumvent[]" the QTA "by artful pleading[.]" Block v. North Dakota ex rel. Bd. of Univ. and School Lands, 461 U.S. 273, 285 (1983). Rather, he is asserting straightforward APA claims. The relief plaintiff seeks as to Counts II(a) and (d) is a declaration that the Secretary had a trust duty to plaintiff and that she erred in determining the extent of her 43 U.S.C. § 1746 authority in connection with his administrative appeal. Because Counts II(a) and (d) do not seek recognition of plaintiff's easement as relief for his APA claims, the APA serves as a waiver of sovereign immunity for these claims for judicial review of an administrative decision. Thus, the court has jurisdiction as to Counts II(a) and (d). Counts II(a) and (d) are not dismissed.

But by Counts II(b) and (c), plaintiff seeks recognition of his road as an encumbrance on Chaney's Native allotment. Therefore, Counts II(b) and (c) suffer from the same problem as Count I. The United States has not waived sovereign immunity for these claims. Counts II(b) and (c) are dismissed.

In Count III, plaintiff seeks mandamus or injunctive relief in the form of an "order directing the Secretary" to

> a. recognize that the Shade access road, as it crosses the Chaney allotment, was and is a "valid existing right" under ANILCA, to which the Chaney allotment is subject; and
> b. take appropriate action to prevent Chaney from interfering with or committing trespass on the right to use of that road[; and]

-13-

> c. take appropriate action under 43 U.S.C. § 1746 to correct the document of conveyance of the Native allotment to Chaney to expressly state that it is subject to an easement and right-of-way of access to the Shade allotment.[28]

In Counts III(a) and (b), plaintiff is plainly seeking recognition of his road as an encumbrance on Chaney's Native allotment. That brings the claims asserted in Counts III(a) and (b) within the purview of the QTA, which means that there has been no waiver of sovereign immunity for these claims. The court lacks subject matter jurisdiction of the claims asserted in Counts III(a) and (b), and these claims are dismissed. As for Count III(c), the claim asserted duplicates the claim asserted in Count II(d). Thus, Count III(c) is stricken.

Plaintiff's "exceptional circumstances" argument cannot save his claims that fall within the purview of the QTA. Plaintiff argues that this case involves "exceptional circumstances," which he argues means that his claims should not be dismissed based on the Indian lands exception to the QTA. The "exceptional circumstance" of this case, according to plaintiff, is that it involves two competing Alaska Native allotments. Plaintiff cites to Albert, 38 F.3d at 1077, in support of this argument, but that case provides no support. There, the court's discussion of "exceptional circumstances" was in connection with an argument that the court should look to the legislative history of the QTA, an argument the court rejected because it found that the QTA was plain on its face. Id. The court did not hold

---

[28]Id. at 16, ¶ 40.

or even suggest that a case involving competing Alaska Native allotments would be so exceptional that the court could ignore the plain terms of the QTA.

Plaintiff also argues that if the Indians land exception applies to his claims, then it will mean that he has no remedy because the Alaska Supreme Court has "held that Alaska courts lack jurisdiction to decide claims involving the ownership or right to possession of Native allotment land." Foster v. State, Dep't of Transp., 34 P.3d 1288, 1290 (Alaska 2001). The Ninth Circuit has already rejected such an argument, observing that "Congress's unambiguous retention of sovereign immunity against quiet-title actions affecting trust and restricted Indian lands applies without regard to the availability of alternative means of review." Albert, 38 F.3d at 1077. The court explained that a "'lack of an alternative forum does not automatically prevent dismissal of a suit. Sovereign immunity may leave a party with no forum for its claims.'" Id. (quoting Makah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th Cir. 1990)). Moreover, as discussed above, the QTA does not apply to all of plaintiff's claims. His APA claims in Counts II(a) and (d) survive the instant motion to dismiss and it is also possible that plaintiff could assert other causes of action against the federal defendants which do not fall within the purview of the QTA.

Because some of plaintiff's claims against the federal defendants are being dismissed, the court must determine whether any of plaintiff's claims against Chaney are subject to dismissal pursuant to Rule 19, Federal Rules of Civil Procedure. "Rule 19(a) requires joinder of a party whose presence is necessary to ensure complete relief among the existing parties,

-15-

or to protect a party whose interests would be impaired or impeded were the action to proceed without that party." Deschutes River Alliance v. Portland General Electric Co., 1 F.4th 1153, 1162–63 (9th Cir. 2021). "If joinder is not feasible, Rule 19(b) requires dismissal when the action cannot proceed 'in equity and good conscience' without the required party." Id. at 1163 (quoting Fed. R. Civ. P. 19(b)). "Under Rule 19, [the court] first determine[s] whether an absent party is a required party; then whether joinder is feasible; and finally whether the case can fairly proceed in the party's absence.'" Id. (quoting Jamul Action Comm. v. Simermeyer, 974 F.3d 984, 996 (9th Cir 2020)).

The United States is a necessary party to the adjudication of plaintiff's claims against Chaney. As discussed above, in the claims in Count I of plaintiff's first amended complaint, which are also asserted against Chaney, plaintiff seeks an adjudication of the validity of his road as an encumbrance on Chaney's Native allotment. In Count IV, plaintiff seeks to have the court "enter an order directing Chaney" to

> a. sign, in a recordable form, an acknowledgment that the Shade access road, as it crosses the Chaney allotment, was and is a 'valid existing right' under ANILCA, to which the Chaney allotment is subject; and
> b. refrain from taking action to interfere with or trespass on the right to use that road.[29]

In Count V, plaintiff asserts a claim for damages against Chaney. Counts IV and V would require adjudication of whether or not Shade's road is an encumbrance upon the Chaney

---

[29] Id. at 17, ¶ 44.

-16-

Native allotment. The United States would be a necessary party to such an adjudication, primarily because Chaney's Native allotment is subject to a restriction against alienation, which means that "any interest therein[] may not be conveyed without the approval of the Secretary." 25 C.F.R. § 152.22. However, because of the Indian lands exception to the QTA, the joinder of the United States as a party to any claim by plaintiff which implicates title to the Chaney Native allotment is foreclosed.

The question then becomes whether plaintiff's claims against Chaney can "proceed 'in equity and good conscience' without" the United States. Deschutes River Alliance, 1 F.4th at 1163 (quoting Fed. R. Civ. P. 19(b)). "Rule 19(b) provides a four-part test to determine whether a party is indispensable to an action." Quileute Indian Tribe v. Babbitt, 18 F.3d 1456, 1460 (9th Cir. 1994). "The district court is directed to balance the following factors: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." Id. "[H]owever, . . . when the necessary party is immune from suit, there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." Id. (citation omitted).

Plaintiff concedes that the United States is an indispensable party.[30] Thus, plaintiff's claims against Chaney, which depend upon the adjudication of whether or not Shade's road

---

[30]Corrected Plaintiff's Opposition to Motion to Dismiss [etc.] at 34, Docket No. 31.

is an encumbrance upon the Chaney Native allotment and upon the residual interests of the United States in the Chaney Native allotment, are dismissed. Plaintiff may, however, amend his claims against Chaney as it is possible that plaintiff may be able to assert plausible claims against Chaney that are not foreclosed by the Indian lands exception to the QTA.

Because plaintiff's claims against the federal defendants that fall within the purview of the QTA are being dismissed, the court does not need to consider the United States' alternative Rule 12(b)(6) statute of limitations argument. Because plaintiff's claims against Chaney are also being dismissed, the court need not consider Chaney's Rule 12(b)(6) argument that plaintiff has failed to state a claim for relief under 43 U.S.C. § 1746.

## Conclusion

The United States' motion to dismiss,[31] in which Chaney joins,[32] is granted in part and denied in part. The motion is denied as to Counts II(a) and (d). The motion is otherwise granted. Counts I, II(b) and (c), III, IV, and V of plaintiff's first amended complaint are dismissed. Plaintiff is given leave to amend his complaint. Should plaintiff elect to file a second amended complaint, his second amended complaint shall be filed on or before September 30, 2021. In the absence of a second amended complaint, this case will proceed as an APA appeal as to Counts II(a) and (d). See Local Civ. R. 16.3.

---

[31]Docket No. 15.

[32]Docket No. 22.

Briefing on plaintiff's motion for partial summary judgment was stayed[33] pending resolution of the instant motion to dismiss. Because defendants' motion to dismiss has now been resolved and substantial portions of plaintiff's first amended complaint have been dismissed, plaintiff's motion for summary judgment[34] is denied with leave to renew.

DATED at Anchorage, Alaska, this 16th day of September, 2021.

/s/ H. Russel Holland
United States District Judge

---

[33] Docket No. 41.

[34] Docket No. 31.

-19-

Case 3:20-cv-00198-HRH   Document 44   Filed 09/16/21   Page 19 of 19