WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


KENNETH SHADE and ERIC SHADE,  )
                               )
                    Plaintiffs, )
                               )
          vs.                  )
                               )
UNITED STATES DEPARTMENT OF    )
THE INTERIOR, et al.,          )
                               )          No. 3:20-cv-0198-HRH
                    Defendants. )
_____)


O R D E R

<u>Motion to Dismiss</u>

    Defendant Ellamae Chaney moves to dismiss plaintiff's claims asserted against her in the fourth amended complaint.[1]  This motion is opposed by plaintiff Kenneth H. Shade.[2]  Oral argument was not requested and is not deemed necessary.

<u>Background</u>

    "Plaintiff, who is an Alaska Native, is a devisee of a restricted Native allotment ('Shade allotment') from his father, Henry Shade, who died testate on March 28, 2009."[3]

---

[1]Docket No. 129.

[2]Docket No 133.

[3]Fourth Amended Complaint [etc.] at 8, ¶ 16, Docket No. 125.

-1-

Plaintiff alleges that "[t]he Shade allotment was conveyed by [the] BLM to Henry Shade on September 23, 1976."[4] Plaintiff alleges that "in the 1960s Henry Shade built and maintained a dirt road approximately one mile in length from Aleknagik Lake Road to his allotment site ('Shade access road')" and that "[t]he Shade access road is the only practicable means of access to the Shade allotment."[5] Plaintiff alleges that under the terms of Henry Shade's will, "[p]laintiff is to receive a house on the Shade allotment and ten acres of land surrounding it" and that his brother, "Eric L. Shade[] is to receive the remainder of the allotment, which is largely undeveloped."[6]

Plaintiff alleges that in 1992, a restricted Native allotment was conveyed to Chaney.[7] Plaintiff alleges that the Shade access road crosses Chaney's allotment.[8] Plaintiff alleges that "Henry Shade spent considerable time and effort in assisting Chaney to obtain her allotment" and that "[t]his consisted of helping her stake the corners of her allotment and supporting her claim to use and occupancy of it."[9] Plaintiff alleges that "Henry Shade and Chaney both assumed, understood, and intended that if Chaney was granted her allotment application,

---

[4] Id. at 8, ¶ 17.

[5] Id. at 8, ¶ 18.

[6] Id. at 8, ¶ 19.

[7] Id. at 9, ¶ 20.

[8] Id.

[9] Id. at 15, ¶ 36.

-2-

Henry Shade, his immediate family, and others could continue their use [of] the road as access to and from Shade's house[.]"[10]

Plaintiff alleges that "[i]n the course of subdividing the Shade allotment" after Henry Shade's death, it was discovered that the "BLM had mistakenly forgotten to include an express reservation of a right-of-way for the Shade access road" even though the "BLM knew from its field work that the Shade access road was built before [Chaney] began the use and occupancy of her allotment site and that the road was necessary to access the Shade allotment."[11] Plaintiff alleges that "[b]ecause of the lack of recognized legal access over the Chaney allotment to the Shade allotment, the subdivision of the Shade allotment and the Henry Shade probate have been put on hold, and [p]laintiff has not been able to receive title to his portion of the Shade allotment."[12]

Plaintiff alleges that "[a]fter learning of [the] BLM's mistake in the Chaney allotment conveyance certificate, [p]laintiff asked Chaney to acknowledge that the Shade access road, as it crosses her allotment, was and is a 'valid existing right' under ANILCA, to which her allotment is subject."[13] Plaintiff alleges that "Chaney has refused to do so[,]" and that "Chaney and those acting on her behalf have interfered and threatened to interfere with the

---

[10]Id. at 15, ¶ 37.

[11]Id. at 9, ¶ 20.

[12]Id. at 10, ¶ 21.

[13]Id. at 10, ¶ 22.

use of the Shade access road by fuel suppliers, tradesmen, and others seeking access to the Shade allotment...."[14]  Plaintiff alleges that Chaney has "rejected suggestions by the federal agencies that she mediate this dispute with" him.[15]  Plaintiff alleges that "[b]ecause of Chaney's actions and failure to act," he "is unable to receive title to his portion of his father's allotment, ... obtain financing or insurance for the house, and ... live in the house that he was intended to inherit."[16]

Plaintiff commenced this action on August 12, 2020.  Plaintiff's original complaint asserted claims against the federal defendants and Chaney, including several which sought recognition of the Shade access road as an encumbrance on Chaney's Native allotment.[17]  On January 29, 2021, prior to any defendants answering, plaintiff filed his first amended complaint, a complaint which also included claims which sought recognition of the Shade access road as an encumbrance on Chaney's Native allotment.[18]  The federal defendants moved to dismiss plaintiff's first amended complaint, a motion in which Chaney joined.[19]  On September 16, 2021, the court granted in part and denied in part the motion to dismiss.

---

[14]Id.

[15]Id.

[16]Id.

[17]Docket No. 1.

[18]Docket No. 14.

[19]Docket Nos. 15 and 22.

-4-

The motion was denied as to plaintiff's Counts II(a) and (d), which were APA claims based on plaintiff's allegation that the Secretary erred in determining the extent of her 43 U.S.C. § 1746 authority in connection with his administrative appeal.[20]  The motion was otherwise granted, and plaintiff's other claims were dismissed as "foreclosed by the Indian lands exception to the" Quiet Title Act.[21]  Plaintiff was given leave to amend his complaint, and on September 30, 2021, plaintiff filed his second amended complaint.[22]  In his second amended complaint, plaintiff asserted an APA claim against the federal defendants, a breach of contract claim against Chaney, and trespass, tortious interference, and takings claims against Chaney and the federal defendants.[23]  The federal defendants again moved to dismiss plaintiff's claims against them.[24]  The court granted in part and denied in part the federal defendants' motion to dismiss.[25]  The motion was denied as to plaintiff's APA claim but was granted as to all other claims against the federal defendants.[26]  In addition, the court dismissed some of plaintiff's claims against Chaney but expressly did not address plaintiff's

---

[20]Order re Motion to Dismiss at 18, Docket No. 44.

[21]Id.

[22]Docket No. 52.

[23]Id. at 20-22, ¶¶ 49-69.

[24]Docket No. 62.

[25]Docket No. 78.

[26]Id. at 8-9.

breach of contract, trespass, tortious interference, and takings claims against Chaney.[27]

Plaintiff was again given leave to amend his complaint.[28]  On May 26, 2022, plaintiff filed

a third amended complaint against the federal defendants,[29] Chaney, and Eric Shade.[30]  In his

third amended complaint, plaintiff asserted breach of contract, breach of the implied

covenant of good faith and fair dealing, trespass, tortious interference, and takings claims

against Chaney.  On June 17, 2022, Chaney moved to dismiss all claims asserted against

her.[31]  On August 16, 2022, the court granted Chaney's motion to dismiss.[32]  Plaintiff was not

given leave to amend as to his takings, trespass, and tortious interference claims.  Plaintiff

was given leave to amend as to his contract claims.

On September 6, 2022, plaintiff filed his fourth amended complaint.[33]  Plaintiff again

asserts breach of contract, breach of the implied covenant of good faith and fair dealing,

trespass, tortious interference, and takings claims against Chaney.  Plaintiff's contract claims

in Count II are based on an allegation that Henry Shade and Chaney created an implied-in-

---

[27]Id.

[28]Id. at 9.

[29]Docket No. 96.  The federal defendants answered the third amended complaint on June 17, 2022.  Docket No. 100.

[30]Eric Shade had since been realigned as a party plaintiff to the claims asserted against Chaney.  See Order re Motion for Realignment at 3, Docket No. 115.

[31]Docket No. 101.

[32]Docket No. 121.

[33]Docket No. 125.

-6-

fact contract "regarding the continued use of the" Shade access road by Henry Shade and his "successors in interest."[34]  Plaintiff alleges that Henry Shade agreed to "assist[] Chaney to obtain her allotment" by "helping her stake the corners of her allotment and supporting her claim to use and occupancy of it."[35]  In exchange, plaintiff alleges that Chaney agreed to allow "Henry Shade, his immediate family, and others" to continue to use the Shade access road.[36]  Plaintiff alleges that "Chaney breached her obligations under the contract" and "breached the covenant of good faith and fair dealing implied in the contract."[37]  For relief on his contract claims, plaintiff seeks specific performance enforcing the contract, or in the alternative, an award of damages.[38]

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, Chaney now moves to dismiss all claims asserted against her.

<u>Discussion</u>

As an initial matter, Chaney moves to dismiss plaintiff's trespass and tortious interference claims in Count III and his takings claim in Count IV.  These claims were

---

[34]Fourth Amended Complaint [etc.] at 15-16, ¶ 37, Docket No. 125.

[35]<u>Id.</u> at 15, ¶ 36.  In his opposition brief, plaintiff contends that Henry Shade agreed "to submit a witness statement in support of [Chaney's] application."  Plaintiff's Opposition [etc.] at 3, Docket No. 133.  But, that is not what is alleged in his fourth amended complaint.

[36]Fourth Amended Complaint [etc.] at 15, ¶ 37, Docket No. 125.

[37]<u>Id.</u> at 16, ¶¶ 39-40.

[38]<u>Id.</u> at 16, ¶¶ 41-42.

dismissed in the court's order dated August 16, 2022,[39] and plaintiff was not given leave to amend as to these claims. Because the court did not expressly dismiss these claims with prejudice, the court assumes that plaintiff repleaded these claims for purposes of appeal. See Vien–Phuong Thi Ho v. ReconTrust Company, NA, 858 F.3d 568, 577 (9th Cir. 2017) (quoting Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012)) ("claims dismissed without prejudice and not repleaded are not preserved for appeal; they are instead considered 'voluntarily dismissed'"). In his opposition to the instant motion, plaintiff states that he is not asking the court "to reconsider" the dismissal of these claims.[40] Thus, plaintiff's trespass, tortious interference, and takings claims in his fourth amended complaint are dismissed for the same reasons those claims were dismissed in the court's August 16, 2022, order.

Turning then to plaintiff's contract claims in Count II, Chaney first moves to dismiss plaintiff's breach of contract claim because it is barred by the Quiet Title Act ("QTA"). This is a facial jurisdictional argument made pursuant to Rule 12(b)(1). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In considering a facial challenge, the court is generally confined to the allegations in the complaint and "assumes the truth of [the] plaintiff's factual allegations and draws all reasonable inferences in its favor." Ecological Rights Foundation v. Pacific Gas

---

[39]Docket No. 121 at 14, 23-24.

[40]Plaintiff's Opposition [etc.] at 2, n.2, Docket No. 133.

and Elec. Co., 803 F. Supp. 2d 1056, 1059 (N.D. Cal. 2011).  Plaintiff bears the burden of

proving that subject matter jurisdiction exists.  United States ex rel. Solis v. Millennium

Pharmaceuticals, Inc., 885 F.3d 623, 625 (9th Cir. 2018).

In his fourth amended complaint, plaintiff alleges

> that Henry Shade and Chaney both assumed, understood, and
> intended that if Chaney was granted her allotment application,
> Henry Shade, his immediate family, and others could continue
> their use [of] the road as access to and from Shade's house, and
> that this right would run with the land for the benefit of Henry
> Shade's successors in interest.[41]

This is an allegation that plaintiff has a property interest in Chaney's allotment, namely an

easement appurtenant, and in his breach of contract claim, plaintiff is attempting to enforce

the purported agreement that conveyed this property interest.  Plaintiff has previously made

the argument that he has a property interest in Chaney's allotment, an argument that the court

rejected.  In its September 16, 2021, order on the United States' motion to dismiss, a motion

in which Chaney joined, the court held that "any claim by plaintiff which implicates title to

the Chaney Native allotment is foreclosed."[42]  The court explained that the United States

would be a necessary party to any "adjudication of whether or not Shade's road is an

encumbrance upon the Chaney Native allotment ... because Chaney's Native allotment is

subject to a restriction against alienation, which means that 'any interest therein[] may not

---

[41]Fourth Amended Complaint [etc.] at 15-16, ¶ 37, Docket No. 125.

[42]Order re Motion to Dismiss at 17, Docket No. 44.

be conveyed without the approval of the Secretary.'"[43]  "However, because of the Indian lands exception to the QTA, the joinder of the United States as a party to any" such claim "is foreclosed."[44]  Plaintiff's breach of contract claim, as currently pled in the fourth amended complaint, is a claim that implicates title to Chaney's allotment.  Thus, plaintiff's breach of contract claim is subject to dismissal for lack of subject matter jurisdiction.

Plaintiff's arguments to the contrary are unavailing.  First, plaintiff argues that the QTA does not apply to a contract that was created before the allotment was granted.  Plaintiff cites to Alaska Department of Natural Resources v. United States, 816 F.3d 580 (9th Cir. 2016), in support of this argument.  That "case involve[d] a land dispute between the State of Alaska and two Alaska Natives, Agnes and Anne Purdy[,]" who were holders of Alaska Native allotments.  Id. at 582.  The State claimed "that it own[ed] rights-of-way for four public trails that cross[ed] the Purdys' land," and "[t]he Purdys dispute[d] the State's claim of ownership...."  Id.  "The State sued the Purdys and the United States[,]" asserting, among others, a quiet title claim, "a declaratory judgment claim seeking essentially the same relief[,]" and a condemnation claim.  Id.  The district court dismissed all three claims for lack of subject matter jurisdiction.  Id.  The court of appeals affirmed the dismissal of the quiet title and declaratory judgment claims.  Id. at 583.  The court of appeals explained that "[t]he Indian lands exception applies if the federal government has a 'colorable claim' that the lands

_____

[43]Id. at 16-17 (quoting 25 C.F.R. § 152.22).

[44]Id. at 17.

in question are trust or restricted Indian lands." Id. at 585 (quoting Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir. 1987)). The court of appeals concluded that the United States had "a colorable claim that the Purdys' allotments are restricted Indian lands." Id. The court of appeals explained that "the allotment certificates alone give rise to a colorable claim that the lands in question are restricted Indian lands, unless the State can show that the rights-of-way it asserts were validly granted before the allotments were issued." Id. (internal citation omitted). Ultimately, the court of appeals held that the Indian lands exception to the QTA applied to the State's quiet title and declaratory judgment claims and that the district court had correctly dismissed those claims. Id. at 586.

Plaintiff relies on the court of appeals' statement that the United States would not have a colorable claim if the State could show that the rights-of-way in question had been validly granted before the allotments were issued. Plaintiff argues that similarly here, the United States would not have a colorable claim, and the QTA would not apply, if the contract at issue, the terms of which allowed Henry Shade and his family to use the Shade access road, had been created before Chaney's allotment was issued.

Plaintiff is essentially arguing that Chaney granted Henry Shade and his successors an easement prior to Chaney's allotment being issued. But, Chaney could not grant a property interest in her allotment prior to her allotment being issued. The only entity that could have granted Henry Shade an easement prior to Chaney's allotment being issued was the United States, and there is no evidence of the United States ever making such a grant.

-11-

As this court has previously held, "the road in question does not legally exist[.]"[45] If the road does not legally exist, plaintiff could never show that the easement, which was the subject of the purported oral contract, existed prior to Chaney's allotment being issued. Quite simply, plaintiff, like the State in Purdy, cannot claim an easement in the Chaney allotment because of the United States' reserved interest in the Chaney allotment and the Indian lands exception to the QTA.

Secondly, plaintiff argues that the QTA would not bar his breach of contract claim to the extent that he is seeking damages. Plaintiff argues that deciding a claim for damages will not require an adjudication of the land dispute at issue.

The court disagrees. The court could not award damages for an alleged breach of contract, which purportedly conveyed an easement, without first determining whether the contract actually existed, what the terms of the contract were, and the rights and interests affected by the alleged breach. If the court had to determine the rights and interests affected by any alleged breach, then the court would have to determine whether there was a valid easement. Any adjudication of plaintiff's breach of contract claim would implicate title to Chaney's allotment, which in turn would implicate the United States' interest in the allotment, which means the breach of contract claim is foreclosed by the QTA. Thus, plaintiff's breach of contract claim must be dismissed.

_____

[45]Order re Second Motion to Dismiss at 6, Docket No. 78.

But even if the court were to find that it has subject matter jurisdiction over plaintiff's breach of contract claim, this claim would still be subject to dismissal pursuant to Rule 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

Plaintiff's breach of contract claim is implausible because plaintiff has not pled an enforceable contract. "'A party seeking specific performance of an oral contract to convey

an interest in real property must first show that the agreement was taken out of the statute of frauds, such as by part performance.'" Matter of Estate of Rodman, 498 P.3d 1054, 1065 (Alaska 2021) (quoting King v. Richards, 584 P.2d 50, 51 (Alaska 1978)). "'Next, he must prove the existence of a contract sufficiently definite and certain in its terms to warrant a grant of specific performance.'" Id. (quoting King, 584 P.2d at 51). "'Formation of a contract requires an offer, encompassing all essential terms, an unequivocal acceptance by the offeree of all terms of the offer, consideration, and intent to be bound by the offer.'" Id. (quoting Hall v. Add-Ventures, Ltd., 695 P.2d 1081, 1087 n.9 (Alaska 1985)). "'A greater degree of certainty is required for specific performance than for damages.'" Id. (quoting Hollaus v. Arend, 511 P.2d 1074, 1075 (Alaska 1973)).

First, plaintiff must have pled an exception to the statute of frauds. Such exceptions include partial performance, id., and promissory estoppel, Kiernan v. Creech, 268 P.3d 312, 315 (Alaska 2012). "[T]he doctrine of part performance is similar to the doctrine of promissory estoppel in that the purchaser must substantially change his or her position—by payment, possession, and improvement of the property—pursuant to an oral agreement." Id. at 317.

Plaintiff alleges that "Chaney has, from time to time, allowed Henry Shade and/or others to use the road across her allotment as access to and from the Shade family home."[46] Plaintiff argues that this is an express allegation of part performance.

---

[46]Fourth Amended Complaint [etc.] at 16, ¶ 38, Docket No. 125.

-14-

It is doubtful that the limited use of the Shade access road by Henry Shade and/or third parties would have caused Henry Shade to substantially change his position such that Chaney's allowance of said use could be considered part performance. But even assuming that plaintiff has plausibly pled that the purported oral contract was taken out of the statute of frauds, exceptions to the statute of frauds such as promissory estoppel and part performance still "require[] an actual promise that must be definitive, must be very clear, and must use precise language." Young v. Kelly, 334 P.3d 153, 157 (Alaska 2014) (citation omitted). Plaintiff has failed to plead a clear and definitive promise made by Chaney, primarily because he has failed to plead what the terms of the purported oral agreement were.

In his fourth amended complaint, plaintiff has alleged that he "was not present during most of the communications between Henry Shade and Chaney" and that he "is unaware of the specific terms of any oral agreement between Henry Shade and Chaney regarding the continued use of the road."[47] Plaintiff cannot plausibly plead that a contract existed when he has admitted that he has no idea what the terms of the purported oral contract were.

Nonetheless, plaintiff insists that he has adequately alleged that there was an implied-in-fact contract between Henry Shade and Chaney. Under Alaska law, "an implied contract arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises. In such a case, the court

---

[47]Fourth Amended Complaint [etc.] at 15, ¶ 37, Docket No. 125.

-15-

merely implies what it feels the parties really intended." <u>Labrenz v. Burnett</u>, 218 P.3d 993, 998 (Alaska 2009) (citations omitted).  Plaintiff alleges that

> it is clear from all the surrounding facts and circumstances in this case that Henry Shade and Chaney both assumed, understood, and intended that if Chaney was granted her allotment application, Henry Shade, his immediate family, and others could continue their use [of] the road as access to and from Shade's house[.[48]]

Plaintiff contends that

> it was known by both that Henry built and maintained the road, Henry and his family needed the road to get to their house, and even Chaney relied on the road to get to her own allotment claim.  It is obvious that if Henry thought Chaney would not agree to allow him to use his access after she received her allotment certificate, he would not have assisted her in her allotment application.  Further, if Henry had known that Chaney would not agree to his use of the road, he would have done everything possible to ensure that his road was listed by [the] BLM as a right-of-way in her allotment certificate.  It would have been unthinkable that Chaney, at the time of her allotment application, would not have understood and agreed that ... Henry and his family could continue to use the road as access to their home.[[49]]

Plaintiff argues that based on these facts and circumstances, it is plausible that there was an implied-in-fact contract between Henry Shade and Chaney.

Plaintiff has not alleged any factual support for his contention that there as an implied-in-fact contract between Henry Shade and Chaney.  Plaintiff alleges that Henry Shade and

---

[48]<u>Id.</u>

[49]Plaintiff's Opposition [etc.] at 13, Docket No. 133.

Chaney "assumed, understood, and intended" that "Henry Shade, his immediate family, and others" could continue to use the Shade access road and "that this right would run with the land for the benefit of Henry Shade's successors in interest."[50] Plaintiff further alleges that this "assumption, understanding, and intention concerned only access to the family house on the Shade allotment, and there was no assumption, understanding or intention that the road could be used for further subdivisions and/or future commercial business operations."[51] But, the fourth amended complaint is devoid of any factual support for these alleged assumptions, understandings, and intentions. Plaintiff has not alleged any "facts" but rather simply alleges that in return for Henry Shade's help with her allotment application, Chaney must have intended that the Shades would continue to be allowed to use the Shade access road. That is not enough to make it plausible that there was an implied-in-fact contract between Henry Shade and Chaney.

But even if plaintiff had pled sufficient factual support for his breach of contract claim, this claim would still be subject to dismissal because it is time barred. Under Alaska law, "[f]or causes of action accruing on or after August 7, 1997, the statute of limitations for breach of contract is three years." Alderman v. Iditarod Properties, Inc., 104 P.3d 136, 141 n.24 (Alaska 2004). The three-year statute of limitations applies to actions involving express or implied contracts. AS 09.10.053. "The statute of limitations begins to run in contract

---

[50]Fourth Amended Complaint [etc.] at 15-16, ¶ 37, Docket No. 125.

[51]Id. at 16, ¶ 37.

causes of action from the time the right of action accrues." Howarth v. First Nat. Bank of Anchorage, 540 P.2d 486, 490 (Alaska 1975). "This is usually the time of the breach of the agreement, rather than the time that actual damages are sustained as a consequence of the breach. A contract action actually accrues or arises when there is an existing right to sue for breach of the contract." Id. at 490-41. However, "under the 'discovery rule' the statute of limitations begins to run on the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights." Flint Hills Resources Alaska, LLC v. Williams Alaska Petroleum, Inc., 377 P.3d 959, 966 (Alaska 2016). "At that point, he should begin an inquiry to protect his or her rights and he is deemed to have notice of all facts which reasonable inquiry would disclose." Pedersen v. Zielski, 822 P.2d 903, 908 (Alaska 1991) (citation omitted).

"The date on which the statute of limitations begins to run is a factual question." John's Heating Service v. Lamb, 46 P.3d 1024, 1031 (Alaska 2002). For that reason, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir.2006)).

It is clear from plaintiff's fourth amended complaint that the statute of limitations has run on his breach of contract claim. The fourth amended complaint refers to a May 12, 2017, letter plaintiff submitted to the BIA. Plaintiff alleges that the letter mentioned "Chaney's

-18-

interference and threatened interference with the use of [the] road...."[52]  In the letter itself, plaintiff stated that "the actions of the Cheneys [sic] in interfering with the right-of-way to the Shade allotment have caused, and continue to cause, serious hardship, loss, and damage to Kenneth and Eric" Shade.[53]  Plaintiff also stated that Chaney's "recently deceased husband, Joe Cheney [sic], had repeatedly taken action to block, threaten to block, or demand payment from tradesmen customers and visitors seeking access to the Shade allotment, in violation of the valid right-of-way to that allotment."[54]  If there were an oral agreement between Henry Shade and Chaney that Henry Shade and his family could continue to use the Shade access road, plaintiff knew by at least May 12, 2017, that Chaney had breached that agreement.   He did not assert a breach of contract claim against Chaney until his second amended complaint was filed on September 30, 2021.  Plaintiff's breach of contract claim is therefore time barred.

Plaintiff attempts to save his untimely breach of contract claim by arguing that Chaney's actions have been a series of separate breaches of the implied-in-fact contract, which would mean that some of the breaches would be within the statute of limitations.

---

[52]Fourth Amended Complaint [etc.] at 11, ¶ 23, Docket No. 125.

[53]Exhibit 1 at 4, Declaration of Russell L. Winner, Docket No. 27.  The court may consider this letter without converting Chaney's Rule 12(b)(6) motion into a motion for summary judgment because the letter is referred to in plaintiff's fourth amended complaint and its authenticity is not disputed.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

[54]Exhibit 1 at 4, Winner Declaration, Docket No. 27.

-19-

"Contracts can contain promises that, although phrased as a single obligation, 'provide for more than one performance by a Promisor.'" <u>Griffith v. Hemphill</u>, --- P.3d ---, 2022 WL 17726651, at *5 (Alaska 2022) (quoting 23 <u>Williston on Contracts</u> § 63:13 (4th ed. May 2022 update)).[55] In such cases, "'the nonperformance of each thing promised is a separate breach of contract' giving rise to a separate cause of action." <u>Id.</u> (quoting 23 <u>Williston on Contracts</u> § 63:13 (4th ed. May 2022 update)). For example, in <u>Griffith</u>, Griffith leased a commercial building to the defendants, and the lease required Griffith to "maintain the premises." <u>Id.</u> at *1. The defendants claimed that Griffith had breached the lease by failing to maintain the premises. <u>Id.</u> Specifically, the defendants complained that Griffith had failed to make necessary building repairs in 2010 and 2016. <u>Id.</u> Griffith argued that the defendants' breach of contract claim was barred by the statute of limitations as they did not make that claim until February 2019. <u>Id.</u> at *4. The Alaska Supreme Court held that "[r]egardless of whether Griffith breached the lease's covenant to maintain and repair the premises in 2010 when the roof leaked, a distinct cause of action accrued when clogged scuppers led the roof to fail in" 2016. <u>Id.</u> at *5. The court explained that "[e]ach time the building needed a repair to keep the premises in good working order, Griffith was required to perform the repair. Each time he failed to perform such a repair, he breached the contract anew, giving rise to a new cause of action." <u>Id.</u>

---

[55] <u>Griffith</u> is the subject of plaintiff's Notice of Supplemental Authority, Docket No. 141, to which Chaney has filed a response, Docket No. 142.

Similarly here, plaintiff argues that each time Chaney interfered with the use of the Shade access road, she "breached the [implied-in-fact] contract anew[.]"  Id.  The problem with this argument is that in his fourth amended complaint, plaintiff has not pled any discrete contract breaches on dates subsequent to May 12, 2017; and he has not pled any breaches (interference with the road use) which took place within three years before the September 30, 2021 filing of plaintiff's second amended complaint.  In short, plaintiff has failed to allege sufficient facts to support his contention that Chaney's actions constituted a series of separate breaches.  Thus, plaintiff's breach of contract claim is subject to dismissal because it is time barred.

In sum, plaintiff's breach of contract claim is dismissed.  And, because plaintiff's breach of contract claim is being dismissed, his breach of the implied covenant of good faith and fair dealing claim must also be dismissed.

## Conclusion

Chaney's motion to dismiss is granted.  Plaintiff's claims in the fourth amended complaint which are asserted against Chaney are dismissed.  Plaintiff is not given leave to amend as amendment would be futile, and plaintiff has already been given several opportunities to amend.  Brown v. Stored Value Cards, Inc., 953 F.3d 567, 574 (9th Cir. 2020).

DATED at Anchorage, Alaska, this 12th day of January, 2023.

/s/ H. Russel Holland
United States District Judge

-21-