IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KENNETH SHADE and ERIC SHADE,

                     Plaintiffs,

vs.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

                     Defendants.

No. 3:20-cv-0198-HRH

## DECISION ON ADMINISTRATIVE APPEAL

By Count I of his fourth amended complaint, plaintiff Kenneth Shade seeks a declaratory judgment against the federal defendants[1] pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701-706. By his administrative appeal, plaintiff seeks review of a December 4, 2019, decision by the Interior Board of Indian Appeals (IBIA). Plaintiff has timely filed his opening brief.[2] The federal defendants have timely filed their brief in opposition.[3] Former defendant Ellamae Chaney has joined in the federal

---

[1] The federal defendants are the United States Department of the Interior; Debra A. Haaland, individually and in her official capacity as Secretary of the United States Department of the Interior; and Eugene R. Peltola, Jr., individually and in his official capacity as Regional Director of the Alaska Region, Bureau of Indian Affairs.

[2] Docket No. 131.

[3] Docket No. 152.

DECISION ON ADMINISTRATIVE APPEAL         -1-

defendants' opposition brief and filed her supplemental brief in opposition.[4]  Plaintiff has replied to both oppositions.[5]  Oral argument was not requested and is not deemed necessary.

## Background Facts

"Plaintiff, who is an Alaska Native, is a devisee of a portion of a restricted Native allotment ('Shade allotment') from his father, Henry Shade, who died testate on March 28, 2009."[6]  The Shade allotment was conveyed by BLM to Henry Shade on September 23, 1976.[7]  "[I]n the 1960s Henry Shade built and maintained a dirt road approximately one mile in length from Aleknagik Lake Road to his allotment site ('Shade access road')" and plaintiff alleges that "[t]he Shade access road is the only practicable means of access to the Shade allotment."[8]  Under the terms of Henry Shade's will, "[p]laintiff is to receive a house on the Shade allotment and ten acres of land surrounding it" and his brother, "Eric Shade ... is to receive the remainder of the allotment, which is largely undeveloped."[9]

On September 25, 1992, a restricted Native allotment was conveyed to Chaney[10] pursuant to Section 905 of the Alaska National Interest Lands Conservation Act (ANILCA), 43 U.S.C. § 1634(a)(1)(A).  Allotments conveyed pursuant to Section 905 of

---

[4]Docket No. 153.

[5]Docket No. 155.

[6]Fourth Amended Complaint [etc.] at 8, ¶ 16, Docket No. 126.

[7]Admin. Rec. at 197-198.

[8]Fourth Amended Complaint [etc.] at 8, ¶ 18, Docket No. 126.

[9]Id. at 8, ¶ 19.

[10]Admin. Rec. at 200-201.

ANILCA, such as Chaney's, are "subject to valid existing rights." Id. The Chaney allotment, which is crossed by the Shade access road, is adjacent to the Shade allotment. Henry Shade did not object to Chaney being granted an allotment. In fact, he filed a witness statement in support of her application, in which he stated that Chaney's use and occupancy of her allotment began in 1965[11] and that "the road that runs through the parcel was in existence prior to Ellamae Chaney's entry on the land[.]"[12]

"In the course of subdividing the Shade allotment" after Henry Shade's death, plaintiff alleges that it was discovered that "BLM had mistakenly forgotten to include an express reservation of a right-of-way for the Shade access road" even though "BLM knew from its field work that the Shade access road was built before [Chaney] began the use and occupancy of her allotment site and that the road was necessary to access the Shade allotment."[13] "After learning of BLM's mistake in the Chaney allotment conveyance certificate, [p]laintiff asked Chaney to acknowledge that the Shade access road, as it crosses her allotment, was and is a 'valid existing right' under ANILCA, to which her allotment is subject."[14] But, "Chaney has refused to do so."[15]

On May 12, 2017, plaintiff sent a letter to Kathy Cline, then acting Director of the Alaska Regional Office of the Bureau of Indians Affairs (BIA).[16] In the letter, plaintiff explained that the Shade access road had been built before Chaney began her use and

---

[11] Admin. Rec. at 208.

[12] Admin. Rec. at 212.

[13] Fourth Amended Complaint [etc.] at 9, ¶ 20, Docket No. 126.

[14] Id. at 10, ¶ 22.

[15] Id.

[16] Admin. Rec. at 191.

DECISION ON ADMINISTRATIVE APPEAL                                           -3-

occupancy of her allotment and asserted that "it ... is an easement implied by law...."[17] Plaintiff contended that "[t]he road across [Chaney's] Native allotment is a 'valid existing right,' as an easement appurtenant by implication and necessity, under Section 905(a)(1) of ANILCA[.]"[18] Plaintiff stated that the Shades were not asking the BIA "to grant ... a new right-of-way across [Chaney's] allotment ... because the Shade allotment already has an existing implied right-of-way across Ms. Cheney's [sic] allotment that is 'otherwise authorized by law' under 25 CFR 169.4(b)(3)(iv)."[19] Plaintiff asserted that "[t]he BIA has a trust duty to the Shades to prevent Ms. Cheney [sic] from any future trespass on the right-of-way to the Shade allotment."[20] Plaintiff requested that the BIA

> (1) confirm to Ms. Cheney [sic] the validity of the right-of-way to the Shade Native allotment that crosses her allotment, giving her a right of appeal if she disagrees, under 25 CFR 169.12; (2) advise Ms. Cheney [sic] that interference with that right-of-way is an impermissible trespass on it, and that she must refrain from any such future trespass, under 25 CFR § 169.413; and (3) recommend that Ms. Cheney [sic] sign an acknowledgment of that right-of-way, to avoid further legal proceedings in this matter.[21]

Plaintiff attached a number of documents to the May 12, 2017, letter. One document was an April 19, 1985, request for a field report in connection with Chaney's allotment application, in which the BLM district manager for the Dillingham area was

---

[17]Admin. Rec. at 191.

[18]Admin. Rec. at 193.

[19]Admin. Rec. at 194.

[20]Admin. Rec. at 195.

[21]Admin. Rec. at 192.

DECISION ON ADMINISTRATIVE APPEAL -4-

asked to "please identify location of road which predates applicant's use & occupancy."[22] The road in question was presumably the Shade access road.

Also attached to the May 12, 2017, letter was a July 17, 1984, letter from Fred Wolf, then the Acting Alaska State Director of the BLM, to Senator Ted Stevens.[23] In that letter, Wolf explained that Chaney's allotment "has not yet been adjudicated or approved" but "we do have affidavits indicating Mr. Shade's access road predated Mrs. Chaney's occupancy; therefore, if her allotment is determined to be valid, the Certificate will contain a reservation for the pre-existing road."[24] One such affidavit, which was attached to the May 12, 2017, letter, was from Daniel Diehl and dated June 15, 1984.[25] Diehl, who was "a realty specialist" for the BIA, averred that he had spoken with Chaney's husband, Joe, who "admitted that the road through Ellamae's allotment was there prior to Ellamae ever staking the land."[26]

Also attached to the May 12, 2017, letter were BLM master title plats, which had been received by the Anchorage BLM office on December 7, 1972, and which show a road going through the parcel that would become Chaney's Native allotment.[27] Also attached was a 1965 field report which stated that "[a]ccording to a BIA report in the case file, the road that runs through the parcel was in existence prior to Ellamae Chaney's

---

[22]Admin. Rec. at 202.

[23]Admin. Rec. at 203.

[24]Admin. Rec. at 203.

[25]Admin. Rec. at 204-205.

[26]Admin. Rec. at 204.

[27]Admin. Rec. at 209-210.

DECISION ON ADMINISTRATIVE APPEAL -5-

entry on the land."[28] The field examiner also noted that Chaney "used a road to reach the allotment that was in place prior to her use. If this application is approved, I recommend that a R/W [right-of-way] for the road be reserved."[29] Additionally, a 1986 photograph that showed "the road through the parcel" was attached as were field notes that identified the road.[30]

By July 17, 2017, plaintiff had not received a response to his May 12, 2017, letter and so he wrote to Cline a second time.[31] In the July 17, 2017, letter, plaintiff requested that the action he requested in the May 12, 2017, letter be taken, and he advised that "[u]nless you either take action on the merits of the request of my May 12th letter within ten days of receipt of the instant letter, or establish a date by which such action will be taken, an appeal shall be filed, in accordance with 25 CFR Part 2."[32]

On August 21, 2017, plaintiff filed a notice of administrative appeal to the IBIA.[33] On August 22, 2017, the IBIA, in its pre-docketing order, stated that plaintiff's "appeal ... is limited to the Board's review of the Regional Director's alleged failure to take required action."[34] The IBIA also called upon the Regional Director of the BIA to "provide the

---

[28]Admin. Rec. at 212.

[29]Admin. Rec. at 214.

[30]Admin. Rec. at 216.

[31]Admin. Rec. at 182.

[32]Admin. Rec. at 182.

[33]Admin. Rec. at 177.

[34]Admin. Rec. at 163.

DECISION ON ADMINISTRATIVE APPEAL                                -6-

Board with a report on the status of this matter and her consideration of [plaintiff's] request, including a timeline for taking action or reaching a decision, as appropriate."[35]

On September 26, 2017, the Acting Alaska Regional Director of the BIA provided a status report.[36] In the status report, the BIA took the position that

> [t]he BIA does not have legal authority to determine or 'confirm' Mr. Shade's implied easement on Ms. Chaney's Native allotment. Additionally, the BIA must follow federal law and regulations to obtain a right-of-way on Ms. Chaney's Alaska Native allotment. As such, it cannot disregard this legal requirement in order to provide the requested relief for Mr. Shade. The BIA is unable to find a permissible legal solution and suggested that [plaintiff] request assistance from the Department's Office of Collaborative Action and Dispute Resolution.[37]

On October 25, 2017, plaintiff filed a notice of appeal of the Acting Regional Director's status report.[38] Plaintiff contended that the status report was an appealable order because it constituted a decision "on the underlying merits of this matter[.]"[39]

On November 1, 2017, the IBIA consolidated plaintiff's appeals and ordered the Regional Director to file a second status report.[40]

On December 4, 2017, the Acting Regional Director filed a second status report, in which the BIA reported on efforts to have Chaney and plaintiff mediate the easement

---

[35]Admin. Rec. at 163.

[36]Admin. Rec. at 152-153.

[37]Admin. Rec. at 153.

[38]Admin. Rec. at 134.

[39]Admin. Rec. at 135.

[40]Admin. Rec. at 130-131.

DECISION ON ADMINISTRATIVE APPEAL                                           -7-

dispute.⁴¹ In his January 4, 2018, response to the second status report, plaintiff indicated his willingness "to enter into mediation...."⁴²

On March 12, 2018, the IBIA requested that the parties, on or before April 13, 2018, "file a joint report with the Board on the status of settlement discussions."⁴³ The parties timely filed their joint report, in which they advised that Chaney was unwilling to participate in ADR, and they requested that a briefing schedule for the consolidated appeals be established.⁴⁴

On May 24, 2018, the IBIA called upon the parties to provide briefing related to the issue of whether the First Status Report was an appealable order.⁴⁵

On July 8, 2019, plaintiff "request[ed] a decision by the Board in this matter" because the last briefing had been filed on July 9, 2018.⁴⁶ On July 11, 2019, the IBIA issued an "Order Concerning Distribution List and Request for Status Report[.]"⁴⁷ In the order, the IBIA determined that BLM should have been included as an interested party and requested "a status report from [the] Solicitor's Office counsel."⁴⁸

---

⁴¹Admin. Rec. at 121-122.

⁴²Admin. Rec. at 115.

⁴³Admin. Rec. at 112.

⁴⁴Admin. Rec. at 104.

⁴⁵Admin. Rec. at 100.

⁴⁶Admin. Rec. at 43.

⁴⁷Admin. Rec. at 48.

⁴⁸Admin. Rec. at 48-50.

DECISION ON ADMINISTRATIVE APPEAL                                                      -8-

On July 25, 2019, counsel for the Solicitor's Office submitted a status report.[49] In that report, counsel stated that "[t]he lands at issue have been conveyed out of Federal ownership and the BLM, the Bureau of Indian Affairs, and the Office of Hearings and Appeals now lack jurisdiction to place a right of way on that parcel."[50] Counsel stated that "[t]he Department can correct patents, but the options for doing so are limited and are not available in this case."[51] Counsel stated that "[w]hile section 316 of the Federal Lands Policy Management Act ('FLPMA'), 43 U.S.C. § 1746, allows the BLM to correct a patent, it requires agreement from the patentee."[52] Thus, counsel concluded that "[t]he BLM's decision to not reserve a right of way, even if erroneous, cannot be changed by the Department at this time."[53]

On August 21, 2019, the IBIA called upon plaintiff and Chaney "to file a statement with the Board stating whether he/she is willing to participate in ADR to resolve this appeal."[54] On September 6, 2019, plaintiff indicated his willingness to participate in ADR.[55] Chaney never responded to the Board's August 21, 2019, request.

---

[49] Admin. Rec. at 33.

[50] Admin. Rec. at 33.

[51] Admin. Rec. at 33-34.

[52] Admin. Rec. at 34.

[53] Admin. Rec. at 35.

[54] Admin. Rec. at 25.

[55] Admin. Rec. at 18.

On December 4, 2019, the IBIA issued an Order Docketing and Dismissing Appeals.[56] The IBIA rendered its decision in the context of Section 2.8, which "is an action-prompting mechanism that allows a party to seek action or a decision by a BIA official on the merits of an issue...."[57] The IBIA observed that "Section 2.8 presumptively requires a decision by BIA on the merits of a request, however, in some cases, BIA may conclude that issuing a decision that reaches the merits of issues raised by a party is not appropriate."[58] The IBIA concluded that this was such a case, finding that "although the Regional Director should have responded to [plaintiff's] request, we find no grounds to order the Regional Director to issue a decision with appeal rights because [plaintiff] is not entitled to a formal decision by BIA on the underlying merits of his request."[59] The IBIA explained that while "[t]here is no dispute that BLM omitted a reservation for the road right-of-way in the certificate issued for Chaney's allotment[,] ... 'it is a long-established principle that patenting the land out of Federal ownership divests the Department of jurisdiction to determine the rights of parties to that land[.]'"[60] The IBIA further explained that "to the extent the Department is authorized to issue a corrected patent under section 316 of FLPMA, 43 U.S.C. § 1746, the authority to do so rests with BLM, not BIA, and would require Chaney's consent."[61] The IBIA concluded that

---

[56] Admin. Rec. at 4.

[57] Admin. Rec. at 8.

[58] Admin. Rec. at 8.

[59] Admin. Rec. at 9.

[60] Admin. Rec. at 9 (quoting Rosander Mining Co., 84 IBLA at 62).

[61] Admin. Rec. at 9.

DECISION ON ADMINISTRATIVE APPEAL -10-

> [b]ecause the Regional Director lacks authority to correct any alleged error in Chaney's BLM-issued patent, [plaintiff] is not injured by BIA's refusal to issue a decision, nor could a decision on the merits by BIA remedy any error in Chaney's patent or establish that [plaintiff] holds a right-of-way across Chaney's allotment. Thus, we find no grounds to order the Regional Director to issue a formal decision on [plaintiff's] request.[62]

The IBIA "conclude[d] that BIA lacks authority to grant the relief requested, the Board cannot order BIA to issue a decision on the merits, and the appeals must be dismissed."[63]

On August 12, 2020, plaintiff commenced this action. In his fourth amended complaint, plaintiff asserts an APA claim alleging that the federal defendants "breached their trust duty" to him and "erred in deciding that they lacked the authority under 43 U.S.C. § 1746 to correct the document of conveyance of the Native allotment to Chaney to expressly state that it is subject to an easement and right-of-way of access to the Shade allotment."[64] Plaintiff's APA claim is now ripe for disposition.

## Standard of Review

"The APA requires courts to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" Turtle Island Restoration Network v. U.S. Dep't of Commerce, 878 F.3d 725, 732 (9th Cir. 2017) (quoting 5 U.S.C. § 706(2)(A)). "'The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.'" Id. (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). "This

---

[62]Admin. Rec. at 10.

[63]Admin. Rec. at 9.

[64]Fourth Amended Complaint [etc.] at 14-15, ¶ 34, Docket No. 126.

standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting Independent Acceptance Co. v. Calif., 204 F.3d 1247, 1251 (9th Cir. 2000)). The agency is required "to 'examine the relevant data and articulate a satisfactory explanation for its action[.]'" Turtle Island Restoration Network, 878 F.3d at 732 (quoting Motor Vehicle Mfs. Ass'n, 463 U.S. at 43). The court

> will strike down agency action as "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or if the agency's decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Id. at 732-733 (quoting Motor Vehicle Mfs. Ass'n, 463 U.S. at 43).

The court "evaluate[s] the [agency's] interpretation of its own regulations using 'the deference framework announced in Kisor v. Wilkie.'" Rubalcaba v. Garland, 998 F.3d 1031, 1037 (9th Cir. 2021) (quoting Reyes-Vargas v. Barr, 958 F.3d 1295, 1300 (10th Cir. 2020)). Under Kisor, the court's first step is to determine whether the regulation in question is "genuinely ambiguous." Id. (citation omitted). If the regulation in question is not genuinely ambiguous, the agency's interpretation is not entitled to any deference. Id. at 1038. If the regulation is genuinely ambiguous, the agency's interpretation must still be "'reasonable'—that is, the interpretation 'must come within the zone of ambiguity the court has identified after employing all its interpretive tools.'" Landis v. Wash. State Major League Baseball Stadium Public Facilities Dist., 11 F.4th 1101, 1105 (9th Cir. 2021) (quoting Kisor, 139 S. Ct. at 2415–16). "Additionally, the

DECISION ON ADMINISTRATIVE APPEAL -12-

agency's interpretation must be 'made by the agency' and 'must in some way implicate its substantive expertise.'" Id. (quoting Kisor, 139 S. Ct. at 2416–17). "Finally, the 'agency's reading of a rule must reflect fair and considered judgment' to warrant deference." Id. (quoting Kisor, 139 S. Ct. at 2417).

## Discussion

This case is before the court pursuant to 5 U.S.C. § 706(2), which provides in pertinent part that a "reviewing court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" By Count I of plaintiff's fourth amended complaint, plaintiff relies upon Section 706 in contending that the court should "review the actions or failure to act of the [federal defendants]."[65] Plaintiff contends that the federal defendants have breached their trust duty to him, as an Alaska Native inheriting a portion of a restricted Native allotment, by failing to protect his rights to the Shade access road which crosses the Chaney allotment.[66] Plaintiff argues that the December 4, 2019, decision of the IBIA was not in accordance with law because the federal defendants "breached their duty of trust."[67]

### A. Easement of Necessity / Valid Existing Rights

"In its relationship with native Americans the Government owes a special duty analogous to those of a trustee." Aguilar v. United States, 474 F.Supp. 840, 846 (D. Alaska 1979). "These exacting fiduciary standards apply to the federal government in

---

[65]Fourth Amended Complaint [etc.] at 14, ¶ 33, Docket No. 126.

[66]Id. at 15, ¶ 34(a).

[67]Id.

DECISION ON ADMINISTRATIVE APPEAL                                                          -13-

its conduct toward Alaskan Natives." Id. (quotation marks omitted). "The protection of Indian property rights is an area where the trust responsibility has its greatest force." Id. Both Henry Shade and Chaney's allotments were based upon trust certificates issued by BLM, the Secretary's designee. The BIA has a fiduciary duty to protect plaintiff's valid existing rights, if any, as regards the Shade access road.

This case presents the somewhat unusual situation where the federal defendants owe a duty of trust to both plaintiff and Chaney because of their Native Alaskan status and ownership of adjacent Native allotments. Whether or not the federal defendants have breached their trust obligation either to plaintiff or to Chaney depends entirely upon resolution of the question which plaintiff raised with the Director of the BIA in his letter of May 12, 2017. There, plaintiff contended that the Shade access road was "an easement implied in law"[68] and a valid existing right under Section 905(a)(1) of ANILCA, 43 U.S.C. § 1634(a)(1)(A). When the Director of the BIA failed to respond to plaintiff's May 12, 2017, claim, plaintiff lodged an appeal with the IBIA. After extensive, unsuccessful efforts to convince plaintiff and Chaney to settle their differences with respect to the Shade access road by means of mediation or settlement, the IBIA held that the granting of the Chaney allotment, which transferred the land in question out of federal ownership, divested the federal defendants of jurisdiction to determine the rights of the parties in the Chaney allotment.[69]

Plaintiff contends that the Chaney allotment is subject to an easement of necessity for the Chaney access road and that the road is a valid existing right. "The doctrine of

---

[68]Admin. Rec. at 191.

[69]Admin. Rec. at 9.

DECISION ON ADMINISTRATIVE APPEAL                                                    -14-

Case 3:20-cv-00198-HRH   Document 156   Filed 06/27/23   Page 14 of 19

easement by necessity applies, generally, against the United States." McFarland v. Kempthorne, 545 F.3d 1106, 1111 (9th Cir. 2008).

> "An easement by necessity is created when: (1) the title to two parcels of land was held by a single owner; (2) the unity of title was severed by a conveyance of one of the parcels; and (3) at the time of severance, the easement was necessary for the owner of the severed parcel to use his property."

Id. (quoting Fitzgerald Living Trust v. United States, 460 F.3d 1259, 1266 (9th Cir. 2006)).

Plaintiff argues that under the applicable regulations, the BIA had the authority to confirm the validity of the existing easement across the Chaney allotment despite the fact that the land in question was no longer owned by the federal government. The regulations to which plaintiff refers are found in Chapter 1, Part 169 of Title 25 of the Code of Federal Regulations. Part 169 deals with 'the procedures and conditions under which BIA will consider a request to approve (i.e., grant) rights-of-way over and across tribal lands, individually owned Indian lands, and BIA lands[.]" 25 C.F.R. § 169.1(a).

On the facts of this case as set out above, plaintiff has a plausible easement by necessity claim. Plaintiff also has a plausible valid existing rights claim based upon 43 U.S.C. § 1634(a)(1)(A). Plaintiff has not instituted proceedings pursuant to 25 C.F.R. ch.1, pt. 169. However, plaintiff was not required to do so.

The federal defendants owe trust obligations to plaintiff and to Chaney as Native allotment holders. In order to fulfill their trust obligations to plaintiff, the federal defendants could have employed Henry Shade's BIA probate proceedings as the forum to resolve the Shade access road issue raised by Count I, paragraph 34(a), of plaintiff's

DECISION ON ADMINISTRATIVE APPEAL                                        -15-

Case 3:20-cv-00198-HRH   Document 156   Filed 06/27/23   Page 15 of 19

fourth amended complaint.⁷⁰ 43 C.F.R. § 30.120 (setting out broad authority of judge in a BIA probate case). Thus, the December 4, 2019, IBIA decision – that the federal defendants were without jurisdiction to consider plaintiff's claims because the Chaney allotment had been conveyed out of federal ownership – was patently erroneous, arbitrary, and capricious.

### B. Correction of Chaney Allotment

In briefing this administrative appeal, the parties have addressed the matter of whether the BIA Director had authority to correct patents pursuant to FLPMA § 316, 43 U.S.C. § 1746. In its December 4, 2019, decision, the IBIA held that "the Regional Director [of the BIA] lacks authority to correct any error alleged in Chaney's BLM issued patent[.]"⁷¹

Plaintiff argues that the federal defendants had the authority to correct the Chaney allotment certificate. Section 1746 provides:

> The Secretary may correct patents or documents of conveyance issued pursuant to section 1718 of this title or to other Acts relating to the disposal of public lands where necessary in order to eliminate errors. In addition, the Secretary may make corrections of errors in any documents of conveyance which have heretofore been issued by the Federal Government to dispose of public lands. Any corrections authorized by this section which affect the boundaries of, or jurisdiction over, land administered by another Federal agency shall be made only after consultation with, and the approval of, the head of such other agency.

As an initial matter, the federal defendants and Chaney point out that in his May 2017 letter to the BIA, plaintiff never asked the BIA to correct Chaney's allotment

---

⁷⁰Docket No. 126 at 15.

⁷¹Admin. Rec. at 10.

DECISION ON ADMINISTRATIVE APPEAL  -16-

certificate pursuant to Section 1746, and thus they argue that plaintiff failed to exhaust his administrative remedies as to his Section 1746 argument. The federal defendants insist that before the court could consider plaintiff's Section 1746 argument, plaintiff would have to request that BLM correct Chaney's allotment certificate. The federal defendants emphasize that such a request would have to be made to BLM because it is BLM, not the BIA, that is authorized to correct allotment certificates pursuant to Section 1746. Plaintiff, however, argues that because the IBIA addressed the Section 1746 issue, he was not required to exhaust his administrative remedies by first presenting to BLM his argument that Section 1746 and its implementing regulations authorized BLM to correct Chaney's Native allotment. Plaintiff also argues that administrative exhaustion would have been futile because BLM has clearly taken the position that Chaney's consent was necessary before BLM could correct her allotment certificate under 43 U.S.C. § 1746. "Where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." Vasquez-Rodriquez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) (citation omitted).

Although the IBIA did address the Section 1746 issue in its December 4, 2019, decision, plaintiff has never put the Section 1746 issue before the BIA or BLM. The Secretary has promulgated regulations "to implement section 316 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1746)[.]" 43 C.F.R. § 1865.0–1. Section 1865.1 of those regulations addresses the application procedure for the correction of conveyancing documents. Plaintiff relies upon Section 1746 in support of his contention that the Chaney allotment should be corrected, but he has not invoked the procedure whereby such a correction might be sought. Thus, plaintiff has failed to

DECISION ON ADMINISTRATIVE APPEAL                              -17-

exhaust his administrative remedies regarding his claim that the Chaney allotment certificate could be corrected.

The court is not convinced that it would be futile for plaintiff to exhaust his administrative remedies. The court understands that there is a dispute between the parties as to the application of the regulations implementing Section 1746. In particular, the federal defendants argue that in order to proceed with an application to correct an allotment, the allotment holder's certificate must be surrendered. In this case, even though the federal defendants have admitted error as to Chaney's allotment, she has refused to participate with plaintiff in a conveyancing correction proceeding. But that does not end the matter. Title 43, Section 1865.1-3, Code of Federal Regulations, makes express provision for notifying an interested party such as Chaney when the correction of a conveyancing error is sought. Were there an application to correct in this case, Section 1865.1-3 would "require the applicant to surrender the original patent or other document of conveyance to be corrected [but] [w]here such original document is unavailable, a statement setting forth the reasons for its unavailability shall be submitted in lieu of the original document." Plainly, this regulation affords BLM the power to deal with the situation we have here. Plaintiff is a third-party (the adjacent allotment holder) who seeks correction of the Chaney allotment – which the federal defendants admit erroneously failed to reserve an easement for the Shade access road.

If Section 1865.1-3 were interpreted as the IBIA has suggested in its decision, Chaney would in effect be handed a power of veto as regards correction of an admitted conveyancing error. Here, the federal defendants' error implicates the BIA's duty of trust to both Shade and Chaney; but, as between them, the equities plainly lie with Shade.

Chaney knew of the existence of the road prior to her selection of an allotment adjacent to the Shade allotment.

In enacting 43 U.S.C. § 1746, Congress plainly and unequivocally authorized the Secretary or her designee to "correct patents or documents of conveyance" issued by the BLM and by regulation the Secretary has reserved the ability to address the problem this case presents. Surely neither the Congress nor the Secretary intended to foreclose the Section 1746 remedy for the correction of an admitted conveyancing error on the part of BLM as to third parties such as plaintiff. But, at this time, plaintiff has not exhausted his administrative remedy for correction of the Chaney allotment.

<u>Conclusion</u>

Given the facts of this case, the IBIA decision declining to take up plaintiff's claim for an easement as a matter of law and as a valid existing right was arbitrary and capricious as to those matters. The decision of the IBIA is reversed, and this matter is remanded to the IBIA for further proceedings consistent with this decision.

DATED at Anchorage, Alaska, this <u>27th</u> day of June, 2023.

/s/ H. Russel Holland<br>United States District Judge