

# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Alaska State Office
222 West Seventh Avenue, #13
Anchorage, Alaska 99513-7504
www.blm.gov/alaska

In Reply Refer To:
AA-8279 (2561)
(944) cag

DEC 1 2 2025
RECEIVED

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

DEC 1 5 2025

DECISION     WINNER & ASSOCIATES

Ellamae A. Chaney      :     AA-8279
P.O. Box 13            :     Native Allotment Application
Dillingham, Alaska 99576 :

<u>Bureau of Land Management Cannot Correct Certificate of Allotment No. 50-92-0680</u>

On July 14, 2023, Kenneth Shade filed a request to the Bureau of Land Management (BLM) to correct Certificate of Allotment No. 50-92-0680 based on his claim that BLM failed to make the Certificate subject to a right of way for the road to his father's allotment.

The Bureau of Indian Affairs (BIA) completed the required certification and filed Native allotment application and evidence of occupancy for AA-8279, on behalf of Ellamae Chaney, on December 7, 1972. The application was filed under the provisions of the Act of May 17, 1906, 43 U.S.C. 270-1 to 270-3 (1970), which was repealed with a savings provision by Sec. 18(a) of the Alaska Native Claims Settlement Act of December 18, 1971 (ANCSA), 43 U.S.C. 1617(a) (1994). The lands in Native allotment application AA-8279 have been surveyed and are now described as:

   Lot 6, U.S. Survey No. 7143, Alaska.

   Containing 17.64 acres, as shown on the plat of survey officially filed on June 15, 1984, located within Sec. 14, T. 13 S R. 56 W., Seward Meridian.

The BLM reviewed Ellamae Chaney's Native allotment application case file AA-8279[1] and issued a notice titled <u>Proposed Correction of Certificate of Allotment No. 50-92-0680</u> on July 26, 2024, to all interested parties. Ellamae Chaney was given 30 days of receipt of that Notice to file a response if she disagreed with the factual or legal basis for that determination or with the description of the right of way.

---

[1] The Native allotment case file AA-8279 is the record.

## Relevant Facts & Evidence

That notice served to inform Ellamae Chaney that the Certificate of Allotment 50-92-0680 was issued without properly making it subject to the pre-existing and nonexclusive use road.

The facts gathered from her Native allotment application case file AA-8279, are as follows.

- The road is visible in an aerial photograph dated 1962 and connects the main village of Dillingham with Shannon Lake and Henry E. Shades home on his Native allotment.

- There is no record that the BLM granted a right of way for the road.

- Ellamae A. Chaney's application and map was received by BLM on Dec. 7, 1972. The survey plat (map) submitted along with the application clearly depicts a road going from the Lake Aleknagik Road to Lot 7, USS 4982, and crossing the lands claimed by Ellamae A. Chaney. Ellamae A. Chaney indicated on her application she used the land from September to March each year starting in 1965.

- The BLM issue a letter October 25, 1974, requesting additional evidence of Ellamae A. Chaney's use and occupancy of the land and verification of when she started using the land.

- A letter from Henry Shade to the Bureau of Indian Affairs (BIA) dated June 7, 1984, gives the history of the road. The first indication of the road's existence was in 1957.

- A 1984 affidavit from Danial Deihl, Realty Specialist with the BIA, in reference to his telephone conversations with Ellamae A. Chaney's husband, Joe Chaney states in part: "Joe Chaney admitted that the road through Ellamae's allotment was there prior to Ellamae ever staking the land."

- The BLM State Director replied to Senator Ted Stevens on July 17, 1984, pertaining to an inquiry of Ellamae A. Chaney's application and the road. The letter states in part: "...if her allotment is determined to be valid, the Certificate will contain a reservation for the pre-existing road. The reservation is conditioned upon the fact that Mrs. Chaney has not enjoyed "potentially exclusive" use of the land within the roadway."

- A field examination of the land applied for was conducted on May 28, 1986. The report dated June 30, 1986, and approved July 1, 1986, mentions the road and shows the road in the pictures taken during the examination.

    The report states on page 1, part A, question 4
    Access to tract by applicant: *By dirt road from the Dillingham Lake Alehnagah Road. The dirt road runs through the parcel to Shannon Lake.*
    The report goes on to state on page 2, part B, question 2
    Are there any conflicts to applicant's exclusive use of land? (Explain):

> *According to a BIA report[2] in the casefile, the road that runs through the parcel was in existence prior to Ellamae Chaney's entry on the lands. There are houses adjoining the parcel that predate the applicant's house.*

- Ellamae's application was legislatively approved on July 16, 1992. ANILCA Sec. 905(a)(1) <u>Subject to valid existing rights</u>, all Alaska Native allotment applications made pursuant to the Act of May 17, 1906 (34 Stat. 197, as amended) which were pending before the Department of the Interior on or before December 18, 1971, and which describe either land that was unreserved on December 13, 1968, or land within the National Petroleum Reserve-Alaska (then identified as Naval Petroleum Reserve No. 4) are hereby approved on the one hundred and eightieth day following the effective date of this Act, except where provided otherwise by paragraph (3), (4), (5), or (6) of this subsection, or where the land description of the allotment must be adjusted pursuant to subsection (b) of this section, in which cases approval pursuant to the terms of this subsection shall be effective at the time the adjustment becomes final. The Secretary shall cause allotments approved pursuant to this section to be surveyed and shall issue trust certificates, therefore.

- Certificate of Allotment (COA) No. 50-92-0680 was issued to Ellamae A. Chaney on September 25, 1992. The COA was not made subject to the pre-existing and nonexclusive use road.

### Chaney's Response to BLM's Proposed Correction of Certificate of Allotment No. 50-92-0680

Ellamae Chaney through her attorney requested additional time to file her response numerous times to discuss possible resolution of the matter with Kenneth Shade. Each request for additional time was granted by the BLM.

On November 15, 2024, Ellamae Chaney through her attorney submitted her response (Attachment 1). First, Chaney argued that the BLM's process violated Chaney's rights to Due Process.

Next, Chaney argues that section 316 of FLPMA cannot apply. First, Chaney focuses on the implementing regulations. She points out that the regulations are written to address the applicant's title to the lands.[3] Once such requirement is that the applicant "surrender the original patent or other document of conveyance to be corrected."[4] In reviewing these regulations, the Interior Board of Land Appeals (IBLA or Board) stated, "[T]he regulations do not contemplate applications being made by a stranger to the patent."[5]

---

[2] The 1984 affidavit of Danial Deihl, Realty Specialist with the BIA.
[3] *See* 43 C.F.R. §§ 1865.1-1, 1865.1-2, and 1865.1-3.
[4] 43 C.F.R. § 1865.1-3.
[5] *Rosander Mining Co.*, 84 IBLA 60, 63 (1984))

Chaney further argues that where the Secretary does not hold title to the property, he has no authority to use section 316 of FLPMA to correct the title. Then Chaney points to IBLA and federal court precedent that the United States loses jurisdiction to correct a patent once it is conveyed out of federal ownership.[6]

Next, Chaney argues the District Court opinion in *Shade v. U.S. Dep't of the Interior*, 679 F. Supp. 3d 900 (D. Alaska), does not require the agency to use section 316 of FLPMA to amend Chaney's Certificate of Allotment because the issue was not before the court. The issue before the court was an appeal of a decision of the Interior Board of Indian Appeals, which lacks jurisdiction to review BLM decisions. As such, the Court's statements regarding BLM's ability to apply section 316 of FLPMA were dicta and "Dictum settles nothing, even in the court that utters it."[7]

Chaney then moved onto the history of how section 316 of FLPMA has been applied by the BLM and the Board. She points to the extensive IBLA history of holding that section 316 of FLPMA can only be exercised if all the landowners agree.[8] She argues, "This interpretation is longstanding and unchanged and is premised on the basic principle that 'patenting the land out of Federal owner divests the Department of jurisdiction to determine the rights of parties to that land.'"[9]

Based on the foregoing, Chaney argues that BLM correcting the Certificate of Allotment without her consent would be an unconstitutional taking.

Next, Chaney turns to the finding of mistake. Chaney disputes BLM made a mistake of fact when it did not reserve Shade's claimed easement by necessity. Chaney points to the timing of when necessity must be shown to argue there was no necessity to this claimed route when Shade received his allotment. Chaney argues that in 1960 when Shade received his allotment, the claimed road did not exist. To the extent BLM was correct in finding a right of way exists, Chaney argues that the scope of the right of way should be limited to access for a single private residence as existed at the time Chaney received her allotment. Last, she points to the other patents along the road, which also did not reserve a right of way, to show that it was not a mistake, but a choice that BLM made to not reserve the road.

Last, Chaney argues that the Secretary should not exercise his authority in section 316 because the equity and justice favor Chaney.

---

[6] Chaney cites to *Michael L. Jensen*, 105 IBLA 375, 378 (1988); *City of Las Vegas*, 178 IBLA 377, 382 (2010); *Lone Star Steel Co.*, 101 IBLA 369, 374 (1988) ("Once a patent issues, the Department of the Interior loses jurisdiction over the land, and BLM no longer may adjudicate the relative rights of private parties."); *Rosander Mining Co.*, 84 IBLA at 64 n.4 ("Consent of the patentee is required in part because surrender of the patent is necessary."; and *State of Alaska v. Norton*, 168 F. Supp. 2d 1102, 1107 n. 11 (D. Alaska) (Holland, J.) for Federal precedent.

[7] Chaney response at 7 (quoting *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 353 n. 12 (2005)).

[8] *Id.* at 7, footnote 28.

[9] *Id.* at 8 (quoting *City of N. Las Vegas*, 178 IBLA 377, 382 (2010)).

### Shade's Reply to Chaney's Response to BLM's Notice

Shade primarily relies on the District Court opinion to argue that BLM must correct Chaney's allotment even if she does not consent. "The court's decision could not have been clearer: BLM has the authority under 43 U.S.C. § 1746, and its implementing regulations, to issue a corrected certificate for the Chaney allotment, and that is true even if Ms. Chaney refuses to agree or surrender her current allotment certificate."[10] Further, he argues the Court found "BLM has trust duty to Kenneth Shade .. to correct Ms. Chaney's allotment certificate."[11] Shade argues "the federal court's ruling regarding the correction of Ms. Chaney's allotment certificate was central to its decision, and it is binding on the parties before that court, including both the Department of the Interior and Ms. Chaney."[12]

Next, Shade responds to Chaney's arguments. He argues she has received whatever due process is required by this opportunity that Chaney was currently using to provide an answer to the BLM's Notice. In response to Chaney's citations to IBLA and federal case law, Shade argues that the District Court already rejected the argument that it should follow precedent.

Shade argues correcting Chaney's Certificate of Allotment would not be an unconstitutional taking because the Certificate is already subject to valid existing rights and thus this correction would not be taking any title rights from Chaney.[13]

As to the timing of the creation of an easement by necessity, Shade points out that Henry Shade received his Certificate of Allotment in 1976, well after the road was established and it provided the sole access to his allotment.

As to the scope of the easement, Shade argues it is "undisputed" that the road has been used by the "Shades and others, not just for residential purposes, but also for a variety of business purposes, on the Shade allotment and the portion of Shannon Lake adjacent to that allotment."[14]

Shade disputes that other means of access existed for Shade to access his allotment. He argues other methods "are not practicable."[15]

In response to Chaney's claim that the lack of identification of an easement in the other 3 parcels the road crosses, Shade states "there was and is no dispute as to the validity of Shannon Lake Road as a public easement across those parcels."[16]

Shade states that the Section 316 process is necessary because obtaining an easement under 25 C.F.R. Part 169 "would require Ms. Chaney's consent and compensation to her."[17]

---

[10] Shade reply at 1-3.
[11] *Id.* at 3.
[12] *Id.*
[13] *Id.* at 4.
[14] *Id.*
[15] *Id.* at 5.
[16] *Id.*
[17] *Id.*

Shade responds to Chaney's arguments regarding the equity and weight of justice by quoting the District Court: "Here, the federal defendants' error implicates the BIA's duty of trust to both Shade and Chaney; but, as between them, the equities plainly lie with Shade."[18]

### Chaney Reply to Shade's Response

On December 20, 2024, Chaney responded to Shade's November 25, 2024, letter. First, Chaney argues the District Court opinion in *Shade v. U.S. Dep't of the Interior*, 679 F. Supp. 3d 900 (D. Alaska) does not create a requirement for the BLM to correct Chaney's Certificate of Allotment pursuant to section 316 of FLPMA. Chaney points to the decision where it states:

> [P]laintiff has never put the Section 1746 issue before the BIA or BLM. The Secretary has promulgated regulations "to implement section 316 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1746)[.]" 43 C.F.R. § 1865.0–1. Section 1865.1 of those regulations addresses the application procedure for the correction of conveyancing documents. Plaintiff relies upon Section 1746 in support of his contention that the Chaney allotment should be corrected, but he has not invoked the procedure whereby such a correction might be sought. Thus, plaintiff has failed to exhaust his administrative remedies regarding his claim that the Chaney allotment certificate could be corrected.

*Id.* at 910-11. As such, Chaney argues the District Court's discussion of section 316 of FLPMA is dicta which is not binding on the agency.

Next, Chaney argues that BLM's determination that the claimed road is a valid existing right to which Chaney's Certificate should have been made subject to. Chaney argues under federal law that an easement by necessity did not exist at the time Shade received his allotment and that no easement by necessity can be created after title has passed.

Chaney further argues that even if an easement by necessity existed, the scope of the easement would be for a homestead and cannot be expanded to commercial uses. Chaney points to the history of Shade's use of the parcel before it was conveyed to show the claimed road was clearly not for commercial uses and the BLM cannot expand the scope of the right of way if one is granted to Shade to its present use.

Last, Chaney argues that the Secretary should not exercise his discretion because the considerations of equity and justice do not warrant an amendment of the parcel.

---

[18] *Id.* at 6.

## Analysis

The first question is whether the District Court's decision requires a certain outcome. The case was before the court as an Administrative Procedures Act, 5 U.S.C. § 706(2), appeal of a decision by the Interior Board of Indian Appeals (IBIA) concluding the Bureau of Indian Affair's (BIA) Regional Director did not have authority to issue a decision regarding Shade's request for an easement across Chaney's allotment. The District Court stated:

> Although the IBIA did address the Section 1746 issue in its December 4, 2019, decision, plaintiff has never put the Section 1746 issue before the BIA or BLM. The Secretary has promulgated regulations "to implement section 316 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1746)[.]" 43 C.F.R. § 1865.0–1. Section 1865.1 of those regulations addresses the application procedure for the correction of conveyancing documents. Plaintiff relies upon Section 1746 in support of his contention that the Chaney allotment should be corrected, but he has not invoked the procedure whereby such a correction might be sought. Thus, plaintiff has failed to exhaust his administrative remedies regarding his claim that the Chaney allotment certificate could be corrected.

*Shade v. United States DOI*, 679 F. Supp. 3d 900, 910-11 (D. Alaska 2023). The District Court also explained that it was "not convinced that it would be futile for plaintiff to exhaust his administrative remedies." *Id.* at 911.

While the Court stated:

> In enacting 43 U.S.C. § 1746, Congress plainly and unequivocally authorized the Secretary or her designee to "correct patents or documents of conveyance" issued by the BLM and by regulation the Secretary has reserved the ability to address the problem this case presents. Surely neither the Congress nor the Secretary intended to foreclose the Section 1746 remedy for the correction of an admitted conveyancing error on the part of BLM as to third parties such as plaintiff.

*Id.* The Court also stated that, "plaintiff has not exhausted his administrative remedy for correction of the Chaney allotment." *Id.* This conclusion confirms the question of whether BLM had the authority to correct Chaney's Certificate of Allotment pursuant to section 316 of FLPMA was not before the Court.

Since the issue was not before the Court, the Court's discussion of the application of section 316 of FLPMA was dicta. The BLM will evaluate the matter in the context of its regulations, Board precedent, and applicable law.

The Board has specifically addressed the question of whether the BLM can use section 316 of FLPMA to correct a patent where the patentee does not consent. In *Pirtlaw Partners,* 183 IBLA 70, 71 (2012), the Board addressed the situation where the BLM attempted to correct a patent on its own initiative pursuant to 43 C.F.R. § 1865.3 when it found it made an error in the reservations in a patent to Pirtlaw Partners. Pirtlaw did not consent to the correction and

appealed the BLM's decision to correct the patent. The Board reviewed the BLM's ability to exercise the discretionary authority granted under section 316 of FLPMA to correct a patent. *Id.* at 73. The Board found "the first prerequisite to an exercise of the authority granted under section 316 of FLPMA is that the United States has title to the land in question." *Id.* In coming to this conclusion, the Board cited to the legislative history of this section of FLPMA as addressed in *Alaska Railroad (On Reconsideration)*, 3 ANCAB 351, 86 I.D. 453 (1979):

> ANCAB quoted the statements of Irving Senzel, then the Assistant Director for Legislation and Planning, BLM, Washington, D.C. Office. In response to concern that new terms and conditions could be inserted in a patent in the guise of correcting it, Senzel explained:
>
> Mr. Senzel. . . . Under the law the title to the land passes when the secretary issues the patent. That land is then beyond the reach of the secretary. He cannot get to the title in any way without going to court alleging some violation of law or fraud or getting a voluntary relinquishment or reconveyance to the government so he can issue a new patent. There is no point in his issuing another patent because he has no authority.
>
> At the same time the secretary does have authority to correct patents and the procedure is to notify the person that the patent contains an error. If he will reconvey it to the United States it will be corrected in such and such a way.
>
> . . .
>
> Well, this bill would just give the secretary authority to correct the patent, but he has to get the title back. And if the person does not want to reconvey the lands for the correction, it would have to be litigated. He can't just issue another patent. … This clause clothes him with the authority to correct it once he has title again. He can't do it in the absence of either going to court or getting agreement of the patentee that the correction should be made.
>
>
> Before the House Committee on Interior and Insular Affairs, Subcommittee on Public Lands, Executive Session, May 8, 1975.

*Pirtlaw Partners, Ltd.*, 183 IBLA at 73-75. The Board then addressed more recent Board precedent in *City of North Las Vegas*, 178 IBLA 385 (2010), which stated:

> [I]t is a long-established principle that patenting the land out of Federal ownership divests the Department of jurisdiction to determine the rights of parties to that land, including recognition of conflicting claims to those lands. *E.g., Germania Iron Co. v. United States*, 165 U.S. 379, 383 (1897); Alyeska Pipeline Service Co., 175 IBLA 1, 2 (2008); *Eddie S. Beroldo*, 123 IBLA 156, 158, 163 (1992); *Rosander Mining Co.*, 84 IBLA 60, 62 (1985); *Henry J. Hudspeth, Sr.*, 78 IBLA 235, 238 (1984). Therefore, the Department, including this Board, has no

> jurisdiction to adjudicate whether the City had a valid existing right to an ROW at the time section 15 was patented to the State. . . . It necessarily follows that the Board also has no jurisdiction to direct BLM to issue an ROW to the City.

*Pirtlaw Partners, Ltd.*, 183 IBLA at 75. Based on the legislative history and Board precedent, the Board found, "Pirtlaw has not surrendered its patent to restore title to the United States. BLM therefore could not act on its own motion to correct the patent pursuant to 43 C.F.R. § 1865.3." *Id.* at 76.

Pursuant to the legislative history, Congress did not intend to give a third party to a patent the ability to seek correction to the patent without the consent of the patentee pursuant to section 316 of FLPMA. Congress had already addressed the ability of a third party to seek redress through the Quiet Title Act, although that option to address the issue was not available here due to the Indian Lands exception. 28 U.S.C. § 2409a. It had also already addressed the government's ability to correct a title when the patentee disagreed, although that option is limited by the statute of limitations which has already expired here. 43 U.S.C. § 2506. The purpose of section 316 of FLPMA is limited to the ability of errors to be corrected where the patentee agrees or requests the change.[19]

The BLM has not found any Board precedent which found BLM has the authority to correct a patent pursuant to section 316 of FLPMA against the patentee's consent. The BLM is bound by Board precedent. *Utah Chapter of the Sierra Club; Southern Utah Wilderness Alliance*, 121 IBLA 1 (1991) ("BLM is bound by Board decisions interpreting statutes and regulations…"). Board precedent and the legislative history of section 316 compels the BLM to find that it lacks the authority to correct a patent where the patentee does not consent to the correction.

### Conclusion

The authorized officer may initiate and make corrections in patents or other documents of conveyance on his/her own motion, if all existing owners agree. 43 CFR § 1865.3. Due to Ellamae Chaney disagreeing to the correction of her Certificate of Allotment No. 50-92-0680, the BLM lacks authority to correct the Certificate of Allotment, and a corrected Certificate of Allotment will not be issued.

### Appeal Procedures

A Federal agency, a regional corporation, or any party claiming a property interest in lands affected by those portions of this decision relating to land selections under the Alaska Native Claims Settlement Act, as amended, or any party adversely affected by the reminder of this decision, may appeal this decision to the Interior Board of Land Appeals by filing a notice of

---

[19] Shade and Chaney raised a number of other arguments in their responses which are not addressed in this decision. In finding that the BLM does not have authority to correct the patent without Chaney's consent, it is unnecessary for the BLM to address whether an easement by necessity could have been created or whether there are due process concerns with how BLM addressed the title issues.

appeal with the Bureau of Land Management, Alaska State Office, within thirty days of receipt of this decision. See DOI Form 1842-1 and 43 CFR Part 4, copy enclosed, for instructions.

The following parties must also be served with a copy of the notice of appeal:

Bristol Bay Native Association
P.O. Box 310
Dillingham, Alaska 99576-0310

Roger W. DuBrock, Esq.
Nathaniel Amdur-Clark, Esq.
K. Amanda Saunders, Esq.
for Ellamae Chaney
Sonosky, Chambers, Sachse
Miller and Monkman LLP
510 L Street, Suite 310
Anchorage, Alaska 99501-1952

Kenneth H. Shade
P.O. Box 1225
Dillingham, Alaska 99576-1225

Russell L. Winner, Esq.
for Kenneth H. Shade
Winner & Associates, P.C.
900 West fifth Avenue, Suite 700
Anchorage, Alaska 99501-2029

Bureau of Indian Affairs
Regional Realty Office
3601 C Street, Suite 1200
Anchorage, Alaska 99503-5947

The appellant has the burden of showing that the decision appealed from is in error. Failure to file the notice of appeal with the Bureau of Land Management within the time allowed will result in dismissal of the appeal. Notices of appeal transmitted by facsimile will not be accepted as timely filed. In order to avoid dismissal of the appeal, there must be strict compliance with the regulations.

*Chelsea Kreiner*

Chelsea Kreiner
Acting Deputy State Director
Division of Land and Cadastral

Enclosures:
Form 1842-1
Appeal Regulations
Copy of Response and Exhibits

Copy furnished to:

Bristol Bay Native Association (CM-RRR)
P.O. Box 310
Dillingham, Alaska 99576-0310

Roger W. DuBrock, Esq. (CM-RRR)
Nathaniel Amdur-Clark, Esq.
K. Amanda Saunders, Esq.
for Ellamae Chaney
Sonosky, Chambers, Sachse
Miller and Monkman LLP
510 L Street, Suite 310
Anchorage, Alaska 99501-1952

Kenneth H. Shade (CM-RRR)
P.O. Box 1225
Dillingham, Alaska 99576-1225

Russell L. Winner, Esq. (CM-RRR)
for Kenneth H. Shade
Winner & Associates, P.C.
900 West fifth Avenue, Suite 700
Anchorage, Alaska 99501-2029
Bureau of Indian Affairs
Regional Realty Office
3601 C Street, Suite 1200
Anchorage, Alaska 99503-5947

Bureau of Indian Affairs
Alaska Title Services Center
3601 C Street, Suite 1200
Anchorage, Alaska 99503-5947

State of Alaska
Department of Natural Resources
Realty Services Section
550 West Seventh Avenue, Suite 1050A
Anchorage, Alaska 99501-3579

State of Alaska
Department of Fish and Game
Division of Wildlife Conservation
Attn: Marla Carter
333 Raspberry Road
Anchorage, Alaska 99518-1599

Records (944)

Chief, Branch of Adjudication (944)

A-053203 (2561)